H. W. KASTOR & SONS ADVERTISING CO., Respondent, v. H. W. ELDERS, Appellant.

#### Kansas City Court of Appeals, April 21, 1913.

1. **CONTRACTS: Indebitatus Assumpsit.** Though there is a written contract, if it has been fully performed a party may sue in *indebitatus assumpsit*, the contract determining the rights of the parties.

2. **PLEADING: Motion to Elect: Motion to Make More Definite and Certain: Demurrer.** By answering the defendant waives his objections set forth in a demurrer, save as to jurisdiction and that the petition does not state a cause of action. He also waives motions to make more definite and certain, or to elect.

3. **CONTRACTS: Interpretation by Parties.** The interpretation which the parties themselves put upon a doubtful contract will be adopted by the court.

4. **COMPENSATION: Construction of Contract.** Where an advertising agency secured for a manufacturer of a cure for the tobacco habit, advertising in various papers and magazines throughout the country, under a contract which provided that it was to be secured "at the lowest rate quoted by said publications," and that the agent should receive his compensation from the publishers, it was *held*, that the "lowest rate" meant the lowest rate obtainable by or quoted to advertisers themselves; but that when the advertisement was secured by an agent, his commission could be deducted from that rate.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk*, Judge.

AFFIRMED.

*W. B. Dickinson* and *C. Dubach* for appellant.

*Culver & Phillips* for respondent.

ELLISON, P. J.—Plaintiff's action is on an account for money paid for advertising and advertising space in various newspapers, periodicals and magazines throughout the country, under a contract to advertise defendant's cure of the tobacco habit. The total amount of the account was $30,142.22, with credits of $27,621.13, leaving a balance of $2501.09. Defendant filed a counterclaim and insisted that he did not owe plaintiff but on the contrary plaintiff owed him more than three thousand dollars. The case was referred by the trial court to B. J. Casteel, a member of the Buchanan county bar, as referee, who found against the counterclaim and in plaintiff's favor in the sum of $1593.75. This finding was approved by the court and judgment entered for that sum.

It will aid to a full understanding of the case to set forth the following, taken from the findings of fact of the referee;

"It appears that weekly and monthly magazines and daily and weekly newspapers have fixed charges or rates for advertising. These rates are quoted from time to time by the publications, and constitute what is termed the card rate. They are based on the amount of space used and the position given the advertisement in the columns of the publication. These rates are subject to change from time to time by the publications, but all advertisers are charged alike; no rebates or favors being shown by any particular advertiser. So that any advertiser may deal direct with the publications, in which case he is charged one uni-

form rate of the particular publication for the kind and character of the advertisement inserted, or what is termed the card rate.

"The evidence shows that in the growth and development of the advertisement business to its present large proportions there has come to be what may be termed a middle-man, or go-between, known as an advertising agent, or agency. This man, or agency, deals with the advertiser on the one hand, advising and assisting him in the selection of publications to be used, and having put in type and preparing advertising matter or copy, making or having made drawings, electrotypes, stereotypes; preparing letters, circulars, pamphlets and literature generally for circulation through the mails and otherwise; and generally conducting what is termed an 'advertising campaign;' while on the other hand, the agent deals with the publications used, placing all orders for advertisements and adjusting all charges and settlements with them, and paying all amounts due them. In fact, in such cases the publications deal with the agent only. The agent orders the space, the same is charged to him by the publication at the card rate less the agency commission or the agency rate, and he pays therefor, and the advertiser has no dealings with the publication whatever. In such case, however, the charge to the agent for the space used is lower than the card rate by from five to fifteen per cent, each publication fixing its own rate, or charge. This is what is variously designated in the testimony as 'the agency rate,' 'the lowest rate,' 'the rate with the commission deducted,' etc. It is given uniformly to all agents or agencies who are recognized by the publications as trustworthy and to whom the publications are willing to extend credit. It is allowed by the publication with the expectation (and it is required by a few publications) that the agent or agency retain as his or its commis-

sion the difference between the card rate and the rate charged the agent.

"It appears that the agent sometimes gives his advertising patrons the benefit of a part of the agent's commission, but this is a matter of contract in each instance, and is determined by the nature of the account, the kind and extent of service required of the agent, competition, etc.

"So that, strictly speaking, the charge to the agent is not an advertising rate, there being but one rate, and that the card rate, charged all advertisers alike; the commission allowed off this rate to agents being intended by the publishers for the advertising agent as remuneration for his services as such.

"These advertising agencies are established, or have offices, in the leading cities of the country, and transact a large volume of business. The evidence discloses that plaintiff has about seventy-five regular employees, many of them experts in advertising, some of whom receive salaries as high as ninety dollars per week. . . . (Here the contract between the parties is set out.)

"Following the execution of this contract plaintiff acted as the advertising agent of defendant, who was treating people principally for the tobacco habit at a sanitarium conducted by him at St. Joseph, Missouri, and also by mail. . . .

"Plaintiff prepared the copy for the advertisements, had electrotypes made, suggested the publications to be used, and (when approved by defendant) placed all orders; checked the publications themselves with the orders to see if the advertisements in fact appeared, and paid the publications at the card rates less the agent's commission. In addition, the plaintiff wrote and rewrote the literature used by the defendant, consisting of letters, circulars, pamphlets, etc. The business between the parties was transacted entirely by correspondence, except one or two person-

al interviews, hundreds of letters having passed, a number of which were introduced in evidence by the plaintiff. . . .

"The account started on the basis of defendant paying plaintiff cash in advance for all advertising directed to be placed, but at the time the parties ceased to act under the contract the defendant was indebted to plaintiff as hereinafter found.

"The total amount of advertising placed by plaintiff for defendant at the regular card rate to advertisers was in excess of $30,000.

"There was never any difference or dispute between the parties as to the state of the account until the relation ceased, except that defendant claimed he was entitled to certain cash discounts. The total claimed by plaintiff to be due in the account stated and sued on is $2501.09."

The defense is largely technical. In the start we have a demurrer to the petition, then a motion to make it more definite and certain, then a motion to compel plaintiff to elect, and then to give security for costs. Each of these was overruled. Then followed a change of venue to another judge and again the demurrer and motions, which were again overruled. Then an answer was filed. Afterwards the referee was appointed. In vacation plaintiff filed an amended petition. Then defendant again filed a motion to require plaintiff to elect and a motion to make the amended petition more definite and certain, and then again filed a demurrer. Each of these was overruled, as they had been twice before. Then defendant refiled his answer.

We are relieved of much of defendant's objection to the judgment by reason of the familiar rule that by answering he waived all of the objections to the sufficiency of the petition presented in the demurrer,

if it stated a cause of action, as well as those objections set up in his motions to elect and to make more definite and certain. [Ewing v. Vernon Co., 216 Mo. 681, 685; State ex rel. v. Bank, 160 Mo. 640, 646; White v. Railway, 202 Mo. 539, 561; Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685, 702; Shuler v. Railway Co., 87 Mo. App. 618, 622; McMillen v. Columbia, 122 Mo. App. 34; Sandusky v. Courtney, 168 Mo. App. 325.

Notwithstanding there was a contract there can be no doubt that the petition stated a cause of action. [Mansur v. Botts, 80 Mo. 651; St. Joseph Iron Co. v. Halverson & Co., 48 Mo. App. 383.]

The contract was in writing in the form of a letter addressed to plaintiff by defendant which was signed by defendant and accepted by plaintiff, reading as follows:

"You are hereby authorized to place all of our advertising for a period of one year from date. On publications that we use, you agree to obtain for us the lowest rate quoted by said publications for the amount of space that we use, you receiving your remuneration from the publications, and place at our disposal gratis the facilities of your ad-writing department and promotion bureau. You further agree to furnish gratis all services in connection with the selection of mediums, plans and preliminaries for all of our advertising, and to co-operate with us in every possible way towards making our advertising a success. It is further understood that we are to pay for all drawings, etchings, half tones, electrotypes, stereotypes, postage or express charges. We agree to pay all bills on or before the 10th of each month."

It will be noticed that plaintiff was to place defendant's advertising in various publications at the "lowest rate quoted by said publications;" and that plaintiff was to receive its "remuneration from the

publications.'' Defendant has insisted that the ''lowest rate'' mentioned in the contract meant the lowest rate after plaintiff's compensation for its services was deducted. But plaintiff contends that the lowest rate meant the best advertising rate obtainable by advertisers, which included a commission allowed agents when they secured the advertisement. The referee found that there was but one rate, ''a card rate,'' charged by the publications to all advertisers alike and out of this the publishers paid the agents or agencies securing the advertisements. In other words the ''lowest rate quoted by publication,'' as mentioned in the contract, was a rate out of which came the commission to the agent. Therefore if plaintiff paid the publications for defendant the lowest rate obtainable, the publication rightfully allowed them to retain out of that amount the commission which they had agreed upon with the publication. Otherwise the agents would get nothing for their services, since it was agreed in the contract that their compensation should come from the publisher. In effect, the whole insistence of the defendant is that he should not only have the lowest rate an advertiser could get, but he was also to have the advantage of plaintiff's commissions. A reasonable and just interpretation of the contract and the evidence does not justify such claim, and so the referee and the trial court found. And we think a fair interpretation of the evidence justifies the statement that the parties themselves so understood the contract, and when that appears the courts will so construe it. Meyer v. Christopher, 176 Mo. 580; Brewing Co. v. Water Works Co., 34 Mo. App. 49.]

It seems that the mode of advertising through a contract agency in papers and magazines throughout the country has come to be an extensive business and that when well conducted, though requiring large sums of money, brings in large returns. Thus it appeared in this case that defendant's advertising bills, which

of course came out of the receipts of his business, grew from less than fifty dollars to as much as four thousand dollars per month. And the subject-matter of this litigation involves an expenditure of nearly thirty thousand dollars, credited down to twenty-five hundred and one dollars, the balance claimed by plaintiff. We are satisfied that the merits of the controversy have been ascertained by the referee and trial court.

Defendant, however, contends that the referee committed error in the admission of evidence and in several conclusions of law; and that the petition was not supported by competent evidence; and that the judgment was excessive; that the referee's finding of facts was not supported by the evidence. Many of these objections have practically been disposed of by what we have already written. To enter into a detailed statement why we consider the referee's report well supported by the evidence would enlarge an opinion beyond any reasonable limit. The allowance of interest was proper. The judgment was not excessive —proper credits were given defendant whereby plaintiff's claim was reduced to $1593.75. Finally, we are clearly of the opinion that no error was committed materially affecting the merits of the controversy, and that the judgment was for the right party, and it is accordingly affirmed. All concur.