NELLIE BOWMAN, Respondent, v. N. E. SHELTON, Public Administrator, Appellant.

St. Louis Court of Appeals. Argued and Submitted June 4, 1913. Opinion Filed June 24, 1913.

1. **APPELLATE PRACTICE:** Conclusiveness of Verdict. A verdict on conflicting evidence, approved by the trial court, cannot be disturbed on appeal; the trial court alone, in an action at law, being authorized to pass on the weight of the testimony.

Bowman v. Shelton.

2. **PLEADING: Joinder of Causes of Action: Running Account.** A claim in gross for sundry services rendered and board furnished at divers times during a period of years, constituting a running account, is but a single cause of action and hence may be pleaded in one count.

3. **REVISED STATUTES: Appendix: Forms for Pleading.** While the publication of forms for pleading in the appendix to the Revised Statutes does not give them express legal sanction, their use for many years in the various revisions is such a recognition of them as entitles them to consideration.

4. **PLEADING: Motion to Elect: Waiver by Pleading Over.** Defendant loses the benefit of his motion to compel plaintiff to elect between causes of action, by pleading over after the motion is overruled.

5. **PARENT AND CHILD: Domestic Relations: Services Rendered Parent: Action by Child: Presumptions.** Where a mother and son and the latter's wife live together as one family, the law presumes that services rendered for, and board furnished to, the mother by the son's wife were rendered and furnished gratuitously, but this presumption may be overcome by testimony that the services were rendered and the board was furnished with the expectation by both parties that they were to be paid for, in which event the daughter-in-law is entitled to recover.

6. **———: ———: ———: ———: Sufficiency of Evidence.** In an action by a daughter-in-law against the estate of her deceased mother-in-law for board furnished to, and services rendered for, the latter, evidence *held* sufficient to overcome the presumption that the services rendered and board furnished were gratuitous because the family relation existed, and to warrant a finding for plaintiff.

7. **———: ———: ———: ———: Evidence.** Where a mother and son and the latter's wife lived together as one family, and board was furnished to, and services were rendered for, the mother by the son's wife, a statement by the mother, that she expected to pay by remembering the daughter-in-law in her will, *held* to warrant a finding that she accepted the board and services with the expectation of paying for them.

8. **———: ———: ———: ———: Instructions.** In an action by a daughter-in-law against the estate of her deceased mother-in-law for board furnished to, and services rendered for, the latter, while a member of the son's family, prosecuted on the theory that the board was furnished and the services were rendered with the expectation by both parties that they were to be paid for, *held* that an instruction, charging the jury that it was not necessary to a recovery by plaintiff that she establish

a formal verbal or written contract, but if they found that the services were rendered or the board was furnished with the expectation on the part of plaintiff that she was to receive pay therefor, and on the part of decedent that she was to pay therefor, such mutual expectation constituted a sufficient contract, correctly stated the law.

9. ————: ————: ————: ————: Instructions. In an action by a daughter-in-law against the estate of her deceased mother-in-law for board furnished to, and services rendered for, the latter, while a member of the son's family, prosecuted on the theory that the board was furnished and the services were rendered with the expectation by both parties that they were to be paid for, the court instructed the jury that, where services are rendered or received, a contract or obligation to pay will be presumed, except as to services rendered by members of one family for each other, in which case the presumption is, that they were intended to be gratuitous, and although the jury might believe that plaintiff and decedent were members of the same family, yet if the jury further believed that plaintiff rendered the services in question and boarded decedent and that the services were valuable and knowingly accepted by decedent, and that the facts and circumstances under which they were rendered were such as to show a reasonable and proper expectation that plaintiff would be compensated therefor, or that both she and decedent intended that compensation was to be made for the services, although no express understanding to that effect was entered into, the jury might find for plaintiff and allow her a just and reasonable compensation for the services she was shown to have rendered; and if the jury found from the evidence that the parties had an understanding that any or all of the services should be charged for by plaintiff, their finding should be for plaintiff for all services covered by such understanding; and, in either case, if the finding of the jury should be for plaintiff, they should allow her a proper and reasonable compensation for the services shown to have been rendered. *Held*, that the instruction was correct.

10. STATUTE OF LIMITATIONS: Running Account. Although all of the items of a running account are on one side, none of the items are barred by the Statute of Limitations unless all are.

11. EXECUTORS AND ADMINISTRATORS: Claims Against Estate: Parol Evidence. Parol evidence is competent to establish liability against the estate of a deceased person for services rendered decedent, and a recovery may be had therefor although no formal account was ever made out.

12. PUBLIC POLICY: How Determined: Courts. The policy of the State is found in its laws, and these are made by the Legislature and not by the courts.

Appeal from Cape Girardeau Court of Common Pleas.—*Hon. R. G. Ranney,* Judge.

AFFIRMED.

*Lane & Alexander* for appellant.

(1) Plaintiff's petition is bad, and defendant's motion requiring plaintiff to elect upon which cause of action she would proceed should have been sustained. Plaintiff's petition blended in one count four separate and distinct causes of action, each requiring a separate contract and different and distinct proof thereof. Sec. 1795, R. S. 1909; Loeffel v. Hoss, 11 Mo. App. 135; Pattison, Mo. Code Pleading (1912 Ed.), secs. 251, 252, 253; Bliss on Code Pleading (3 Ed.), secs. 119, 120, 121; Flowers v. Smith, 214 Mo. 128; Sidway v. Land & Live Stock Co., 163 Mo. 372; Sidway v. Land & Live Stock Co., 187 Mo. 659; Snyder v. Free, 114 Mo. 372. (2) The demurrer to the evidence should have been sustained because: (a) The plaintiff's petition is bad and will not support the judgment in this case. See authorities under point 1. (b) The testimony produced by the plaintiff was insufficient to overthrow the legal presumption that the services rendered and board furnished to the deceased, were not gratuitous, and to establish by proof a contract, where the parties, as in this case, occupy a family relation, the proof should be strong and clear that it was the purpose and intent of the decedent to assume a legal obligation, capable of being enforced in law against her. Page on Contracts (1905 Ed.), secs. 780, 781; Woods v. Land, 30 Mo. App. 181; Castle v. Edwards, 63 Mo. App. 564; Brock v. Cox, Adm., 38 Mo. App. 46; Lawrence v. Bailey, 84 Mo. App. 109; Bank v. Aull, 80 Mo. 202; Snyder v. Free, 114 Mo. 371; Fitzpatrick v. Dooley, 112 Mo. App. 172. (3) Plaintiff's instructions numbered three and four are erroneous

for the reason that they are not supported by the testimony in the case.  See authorities cited under point 2.
(4)   The court erred in refusing defendant's instructions numbered seven and eight.   Instruction No. 7
is based on the five year Statute of Limitations.   Instruction No. 8 is based on the theory that the testimony of the plaintiff did not even tend to prove any
agreement or understanding between the plaintiff and
decedent prior to December, 1907.   R. S. 1909, sec.
1893; Chapman v. Hogg, 135 Mo. App. 660; Loeffel v.
Hoss, 11 Mo. App. 135; Sidway v. Land & Live Stock
Co., 187 Mo. 668.

M. A. Dempsey and T. D. Hines for respondent.

(1)   Under the circumstances of the character disclosed by this record, the question whether the board
and services were intended as a mere gratuity, or
under an implied contract for pay, was a question for
the jury, in this State.   Lillard v. Wilson, 178 Mo.
145; Kerr v. Cusenbary, 60 Mo. App. 563; Voerster v.
Kunkle, 86 Mo. App. 197; Sprague v. See, 152 Mo.
327; Carroll v. McDonnell, 139 Mo. App. 454.   (2)   If
the court did err in overruling defendant's motion to
require plaintiff to elect which cause of action she
would proceed to trial on, such a criticism of the petition being that it improperly commingled several
causes of action in one count, which would be proper
enough in separate counts of the same petition, was
waived by defendant, for it appears that after the motion was overruled the defendant filed its answer and
proceeded with the trial throughout.   Conner v. Railroad, 149 Mo. App. 869, 690; White v. Railroad, 202
Mo. 559 to 562; Aley v. Railroad, 211 Mo. 481; Finnell
v. Railroad, 159 Mo. App. 522.   (3)   The matter set
up in the petition is properly plead as items of an
account constituting one cause of action; and it would
have been improper to have separately plead such

matter in separate counts. The whole constituted but one cause of action, and is customarily so plead. McAdam v. Scudder, 354; Ryans v. Hospes, 167 Mo. 342; Lillard v. Wilson, 178 Mo. 145; Christianson v. McDermott, 123 Mo. App. 448; Brinton v. Thomas, 138 Mo. App. 64; Lambert v. Hodgdon, 154 S. W. 450. (4) The objection of defendant's counsel that the petition is insufficient because it fails to allege a demand of payment is not well taken: First, because no demand was necessary before suit was instituted, and, second, because such a defense was available to defendant only by way of answer, according to the requirements of the statute. Sec. 2283, R. S. 1909. (5) The petition is not defective in that it failed to allege that the board, washing and nursing were furnished at the special instance and request of defendant, as is contended by defendant. Sec. 1832, R. S. 1909; Lillard v. Wilson, 178 Mo. 145; 15 Amer. and Eng. Ency. of Law (2 Ed.), sec. 1082. (6) It will be observed that defendant did not attack the integrity of the petition by demurrer, nor by motion to make more specific, but answered to the merits. The rule is that, after answer to the merits is filed, the petition is to be liberally interpreted and every reasonable inference indulged in favor of the pleader. McIntyre v. Ins. Co., 142 Mo. App. 265. (7) The five years bar does not apply to any of the items of the account sued on in this case, because the account was open and current or running, and it is fairly inferable from the conduct of the parties while the account was accruing that the whole was to be regarded as one; none of the items are barred unless all are; and it makes no difference if all of the items are on one side of the account. Ring v. Jamison, 66 Mo. 424; McAdam v. Scudder, 127 Mo. 354; Chadwick v. Chadwick, 115 Mo. 581. (8) Where the services sued for are rendered by the daughter-in-law, she alone is the proper party

plaintiff. Lillard v. Wilson, 178 Mo. 145; R. S. 1909, sec. 8397. (9) Counsel for defendant admit that plaintiff expected compensation, but say she expected it in the form of a devise or a legacy and that this suit is the outgrowth of her disappointment. The expectation of compensation for the board and service, even in the form of a legacy, is sufficient under the repeated rulings of this court. The form in which the compensation is expected makes no difference. Christianson v. McDermott, 123 Mo. 448.

REYNOLDS, P. J.—Mrs. Eliza Noland died the 30th of January, 1910, on a farm at Bainbridge, Cape Girardeau county, on which farm she had lived and reared her family. She was about eighty-four or eighty-five years of age at the time of her death and had been a widow for a number of years. The farm on which she lived and died was her own property. By her last will she devised the farm to an only daughter, Mrs. Ellen Bowman, who survived her. Her only other heir at law was a son, Henry Bowman, husband of the plaintiff here, to whom she left five dollars. Henry Bowman had married the plaintiff some twenty-five years prior to the death of his mother. Prior to the marriage he had lived on the farm mentioned with his mother and after his marriage he and his wife continued to make their home there, the only other member of the family being the daughter of Mrs. Bowman by a former marriage. Along in 1900 or 1903, the St. Louis & San Francisco Railway Company was constructed either through or near the farm, on which farm, in addition to a small dwelling, were a storehouse and wharf on the Mississippi river. Bainbridge appears to have been a station on the railroad and Henry Bowman, the husband of plaintiff, kept a small grocery there and managed the wharf. He was also post master at the village of Bainbridge. Along in 1902 or 1903, Mrs. Bowman commenced keeping board-

ers. Prior to 1903 Mrs. Noland, while living in the house with the Bowmans, had provided for herself, living in her own room. When Mrs. Bowman commenced keeping boarders, either in 1902 or 1903, her mother-in-law appears to have discontinued providing her own meals, and while she still continued to occupy one room in the house, she took her meals with the family. As she advanced in years and became feeble, the plaintiff took care of her, nursing and attending on her, the necessity for attendance increasing with the years.

The question presented in this case arises over the right of appellant here to charge for board and these services.

The action was commenced October 24, 1910. The petition in the cause, in one count, avers that Oliver Bowman, who at the time of the institution of this action had charge of the estate of Mrs. Nellie Bowman, as executor under her will, was indebted to plaintiff in the sum of $1425 on account of board and washing furnished Mrs. Noland from March 8, 1902, to January 30, 1910, at fifteen dollars per month, and for services of plaintiff as a nurse in taking care of Mrs. Noland during her illness from December 23, 1907, to the 23rd of February, 1908, at the rate of $2.50 a day, amounting to $155, and for services as a nurse in her last illness from November 15, 1909, to January 30, 1910, in the sum of $380, being at the rate of five dollars a day, and for services rendered Mrs. Noland by plaintiff, "in watching after and taking care of her" from November 15, 1906, to November 15, 1909, at the rate of five dollars a month, a total of $180, the total amount claimed being $2140.

The defendant appearing moved the court to require plaintiff to elect upon which cause of action stated in her petition plaintiff would proceed. This motion was overruled, defendant excepting and filing

an answer, which, after a general denial, pleads the Statute of Limitations thus: "Answering further and as a defense to said petition defendant states that the amount alleged to be due plaintiff for board and washing prior to the 29th day of November, 1905, if any, or upon any cause of action therein stated accrued to plaintiff more than five years next before the filing of her petition," and it is averred that whatever cause of action is stated in the petition, that accrued prior to the 29th of November, 1905, is barred by the Statute of Limitations.

The cause was tried before the court and a jury and at the conclusion of the testimony for plaintiff, defendant demurred to the evidence. This was overruled, defendant excepting. Whereupon defendant offered his evidence. At the conclusion of all the testimony in the cause defendant again renewing his demurrer to the evidence, the demurrer was overruled, defendant excepting.

At the instance of plaintiff the court gave four instructions, all of which were excepted to by defendant. At the instance of the defendant the court gave six instructions and refused two. One of the instructions asked by defendant and refused was that if the jury found the issues for plaintiff, in arriving at the amount of their finding they should not take into consideration any services rendered or meals furnished prior to the 29th of November, 1905; in the other refused instruction the court was asked to tell the jury that they should not take into consideration the charge for any services rendered or meals furnished deceased prior to September, 1907.

The jury returned a general verdict in favor of plaintiff, assessing her damages at the sum of $700. Filing a motion for new trial, as also one in arrest, and excepting to the action of the court in overruling these motions, the executor duly perfected his appeal

to this court. Pending the appeal the executor resigned and N. E. Shelton, public administrator of Cape Girardeau county, took charge of the estate. Entering his appearance here and filing a motion to that effect, he has been duly substituted as appellant.

This presents a case of which we have recently had quite a number of like character, of a dispute arising on the death of a member of a family over the question as to whether the services rendered her while the parties were all of one family were gratuitously furnished in consideration of and as growing out of the family relation, or whether they were furnished under a contract, express or implied, or under such circumstances as created an obligation on the part of the estate of the deceased to pay for them. The determination of this class of cases is so entirely a matter for the jury and for the trial court that if no substantial error has been committed in the reception or rejection of testimony, or in the matter of the giving or refusal of instructions, and there is substantial evidence to support the verdict, the appellate courts cannot and will not interfere, the verdict having been approved by the trial court. That court alone is authorized in an action at law, as invariably held, to pass on the weight of the testimony.

It is very earnestly insisted by counsel for appellant that two or more causes of action are improperly joined in one count in the petition and as noted, a motion was filed to compel plaintiff to elect as to which cause of action she would rely upon. That motion was overruled, whereupon defendant answered and pleaded, after a general denial, the five-year Statute of Limitations. An examination of this petition does not sustain this charge that there are several causes of actions counted upon. As the facts are pleaded in the petition, the account is a running account, made up of various items, accruing at different dates but constituting one

175 Mo. App. 45

cause of action, properly stated in the one count for board and services; a claim in gross for sundry services rendered and board furnished at divers times during a period of years in the lifetime of the deceased. [McAdam v. Scudder, 127 Mo. 345, l. c. 354, 30 S. W. 168.] For very many years there has been published as an approved form, a petition in an action for goods sold and delivered, work done, materials provided and money lent, these all in one count. [See Form 88, of Forms, R. S. 1909.] While the publication of this form does not give it express legal sanction, its use for so many years in our various revisions is such a recognition of it as entitled it to consideration.

Aside from this, defendant lost the benefit of his motion to elect by pleading over. This has been so often decided by our Supreme Court and by the appellate courts of the State that it may be said to be a closed question, one no longer open to debate. We refer, in passing, however, to the decisions of the Kansas City Court of Appeals in Finnell v. Metropolitan Street Ry. Co., 159 Mo. App. 522, l. c. 525, 141 S. W. 451, and Kastor & Sons Advertising Co. v. Elders, 170 Mo. App. 490, 156 S. W. 737, as containing very full collections of the decisions on this point. This disposes of the first assignment of error made by the learned counsel for appellant.

The second and third assignments are that the court erred in overruling the demurrers to the evidence at the close of plaintiff's case and at the close of the whole case. We cannot agree to these assignments as being well made. There is substantial evidence in the case that the services were rendered at the request of the decedent by the complainant; that she was conducting the boarding house herself, independent of her husband; that her mother-in-law boarded with her, with the expectation on both sides that the board was

to be paid for; that there was a recognition of an obligation to pay and expression of an intention to pay for them by Mrs. Noland. It is true that the testimony is not very strong and that there is a good deal of contradiction in the testimony over the facts. That for the time covered by these transactions the parties, that is Mrs. Noland, her son Bowman and the wife of the latter, lived together as one family, is fairly clear. When parties occupy that position the burthen is upon the party claiming pay for board or services to show that the services and board were not rendered and furnished gratuitously. The family relationship presumptively disposes of any right to claim compensation. That, however, is a presumption which may be overcome by testimony, and the weight to be given that testimony is for the jury in the first instance and the trial judge in confirmation of it. We cannot say, on reading all of the testimony in the case that there was no substantial evidence overcoming the presumption arising from the family relationship. That being so, we are concluded by the verdict of the jury and the finding of the trial court.

It may be, as some of the evidence tends to show, that the manner in which Mrs. Noland expected to pay for the services was "by remembering Mrs. Bowman in her will." Referring to like evidence in a case before it, the Kansas City Court of Appeals in Christianson v. McDermott's Estate, 123 Mo. App. 448, 100 S. W. 63, has said that while there is some evidence tending to show that the claimant in that case expected to be compensated by being remembered in the will, the evidence shows further that she did expect remuneration in some form and that the deceased agreed that she should be remunerated. Says the court (l. c. 451): "We are at loss to know why, if a remuneration was expected and promised for the services, plaintiff would not be entitled to it although

she did not get it in the form so expected. It seems to us the only question in the matter is, was plaintiff entitled to pay for her services.'' That is practically the case here to some extent. There was evidence that what Mrs. Noland meant when she said that Mrs. Bowman should not lose by her care and attention of her, was with reference to Mrs. Noland's final disposition of her estate, but there was in these very expressions and the connection in which they were used, sufficient to warrant the jury to find that the services were rendered on the expectation of both parties that they were to be paid for. That, as said by the Kansas City Court of Appeals in the Christianson case, supra, will be sufficient on which to base a finding. We agree to this view, and therefore cannot sustain either of these assignments of error in overruling the demurrers.

The fourth error assigned is to the giving of the third and fourth instructions at the request of plaintiff. The third instruction, in substance, told the jury that it was not necessary to a recovery by plaintiff that she establish a formal verbal or written contract, but if the jury found ''from a consideration of all the evidence that services were rendered or board furnished with the expectation at the time on the part of plaintiff that she was to receive pay therefor and the expectaiton on the part of Eliza Noland that she was to make compensation therefor, such mutual expectation constituted a sufficient contract within the legal meaning of the term.''

The fourth instruction told the jury that where services are rendered or received ''a contract or obligation to pay will be presumed, except services rendered by members of one family to each other, in which case the presumption is that they were intended to be gratuitous,'' and although the jury might believe that the plaintiff and the deceased were members of

Bowman v. Shelton.

the same family, if they further believed that the plaintiff rendered services claimed for and boarded the deceased, and the jury found that the services were valuable and knowingly accepted and received by the deceased, and that the facts and circumstances under which they were rendered were such as to show a reasonable and proper expectation that plaintiff would be compensated therefor, or that both she and the deceased intended that compensation was to be made for the services although no express understanding to that effect was entered into, the jury might find for plaintiff and allow her a just and reasonable compensation for such services as are shown to have been rendered, and that if the jury found from the evidence that the parties had an understanding that any or all of the services should be charged for by plaintiff, their finding should be for plaintiff for all services covered by such understanding, and in either case, if the finding of the jury should be for plaintiff they will allow her a proper and reasonable compensation for the services shown to have been so rendered, not to exceed the sum of $1425 for board and not to exceed the sum of $535 for nursing. It will be seen that this instruction eliminates the item of $180 claimed for services in watching after and taking care of the deceased from November 15, 1906, to November 15, 1909, that item apparently having been abandoned.

We are unable to discover any error whatever to the prejudice of the defendant in these instructions. They state the law applicable to this case as has been determined in many decisions of our courts. They were in line with those given at the instance of the defendant, which told the jury in most unequivocal and even emphatic terms that the burden was on plaintiff to overcome the presumption that they were gratuitous, that presumption arising from the family relationship, and that plaintiff, before she can recover

"must prove by a preponderance of the evidence that there was an intention on the part of the plaintiff to charge for the services rendered and the meals furnished, if any, at the time, and an intention on the part of the deceased, Mrs. Noland, to pay for the same, and unless you do so find your verdict must be for the defendant."

The fifth assignment of error is to the refusal of defendant's instructions numbered 7 and 8, invoking the Statute of Limitations as against items prior to 1905 and 1907. The learned counsel for appellant rely in support of their contention for the bar of the statute upon the decisions of our court in Loeffel v. Hoss, 11 Mo. App. 133, l. c. 135; Chapman v. Hogg, 135 Mo. App. 654, l. c. 660-661, 116 S. W. 492, and Sidway v. Missouri Land & Live Stock Co., 187 Mo. 649, l. c. 668, 86 S. W. 150. We do not think that the facts on which the bar of the statute was interposed in the Loeffel and Chapman cases, are present in the case before us. In each of those cases there was an entire cessation of the relation between the parties and after the lapse of a considerable time and in an entirely disconnected transaction charges were again made. We held in both those cases that the statute did interpose as a bar and that the accounts were not connected accounts. That is not the case here.

As we understand the decision of our Supreme Court in Sidway v. Land & Live Stock Co., supra, it is not only not in favor of defendant but is against his position. Quotation is there made from Chadwick v. Chadwick, 115 Mo. 581, l. c. 586, 22 S. W. 479, of what Judge BLACK, speaking for the court has there said, namely: "It seems to be quite generally held that if the items are all on the one side, then the account is not mutual in the sense that the last item will draw after it the items previously charged so as to save the bar of the Statute of Limitations as to the whole

account; but the rule has been otherwise settled in this State. Speaking of our decisions upon this point, it was said: 'They are to the effect that when the account sued on is a running account, and it is fairly inferable from the conduct of the parties while the account was accruing, that the whole was to be regarded as one, as in case of a merchant's account against a customer, none of the items are barred by the statute unless all are.' [Ring v. Jamison, 66 Mo. 424, 1. c. 428.]'' Following this quotation it is held by our Supreme Court in the Sidway case, supra, 1. c. 669, that they are accepted as announcements of the true state of the law in this State.

Applying the rule above announced to the facts here, we hold that this, as pleaded, is a running account, and that the Statute of Limitations does not apply to any items in it unless to all, and that would include the last item, which last item is undoubtedly within the statutory period and is not subject to the bar of the statute.

The remaining assignments of error are to the overruling of the motion for new trial and in arrest. Holding as we do on the above propositions, these motions were properly overruled.

The learned counsel for appellant, in a very fervid argument, both printed and oral, inveigh against the danger of allowance of accounts of this kind, brought up after the death of the party whose estate is to be charged. That may be. It may be that it is dangerous, in a way, to allow accounts of this nature and under like circumstances to be recoverable, especially when, as here, and in all like cases which have come before us, no memorandum of the items, no account in fact, was made or kept of them during the life of the alleged debtor; no formal account ever made out, and where the proof of the fact of its acknowledgment and even of its existence rests in parol; that parol

testimony generally, certainly often, coming from interested witnesses, not so interested to be disqualified, witness held qualified by law. Inasmuch as our lawmaking power has not seen fit to impose upon these transactions any of the restrictions imposed in other cases, as for instance by the Statute of Frauds in specified cases, the trial courts must admit this parol evidence and the appellate courts are powerless to overturn verdicts, those verdicts affirmed by the trial court, on the weight of evidence or on any supposed impolicy of allowing claims of this kind to be presented and prosecuted. The power of restraint as to maintenance and establishment of like contracts, proof of which rests in parol, is with the legislative, not with the judicial, department of the government. The policy of the State is found in the laws of the State, and these are made, not by the courts, but by the Legislature. Under the law as it is, where there is any substantial evidence sustaining the claim and that evidence has been passed upon by the jury and its verdict approved by the trial court, and judgment has followed, we are bound to affirm, absent any error in the giving or refusal of instructions or in the admission or exclusion of testimony.

We find no such errors here. The judgment of the circuit court must be and is affirmed. *Nortoni* and *Allen, JJ.,* concur.