THE STATE ex rel. MARY B. CASE et al. v. THOMAS J. SEEHORN, Judge of Circuit Court of Jackson County.

In Banc, July 12, 1920.

1. **MANDAMUS: Refusal to Take Jurisdiction: Remedy: Appeal.** It is a general rule that mandamus will not lie if there exists a specific and adequate remedy by appeal or writ of error. But if the circuit court did not dismiss the cause, but merely refused to proceed with it on the ground that it was without jurisdiction to do so, and entered no judgment from which an appeal will lie, the rule is not applicable, and mandamus will lie.

2. ———: ———: **Inadequacy of Remedy: Superintending Control.** The writ of mandamus will go in many cases despite the fact that the circuit court has acted, if such court, on misapprehension of the law, has declined to take jurisdiction. The fact that the statute (Sec. 114, Laws 1913, p. 644) provides for an appeal after judgment in a proceeding to review an order of the Public Service Commission does not destroy the superintending control of the Supreme Court.

3. **JURISDICTION: Review of Order of Public Service Commission: Constitutional Objections.** The statute which provides that writs to review orders of the Public Service Commission may be sued out of "the circuit court of the county where the hearing was held or in which the commission has its principal office" (Sec. 111, Laws 1913, p. 641) is not in conflict with those provisions of Section 53 of Article IV of the Constitution which declare that the General Assembly shall not pass any local or special law "regulating the practice or jurisdiction of courts" or "legalizing the unauthorized or invalid acts of any officer" and that "in all other cases where a general law can be made applicable, no local or special law shall be enacted."

4. ———: ———: ———: **Jurisdiction Determined by Commission.** The Public Service Act of 1913 vests all circuit courts with potential jurisdiction to review orders of the Public Service Commission, and gives to the commission power to fix the time and place of hearings, and includes all parties and all courts in the sense that any circuit court may take jurisdiction upon the stated condition that the hearing was held in the county, and the fact that the statute in conferring jurisdiction on the circuit court where the hearing was held localizes the jurisdiction and thereby vests the commission with power to determine the jurisdiction does not make it a special law in the constitutional sense; for the condition that jurisdiction shall depend upon a hearing having been

State ex rel. Case v. Seehorn.

held in the county, is not an unreasonable one, and this is the test.

5. ———: ———: **Place of Hearing: Presumption.** The presumption is that the Public Service Commission in fixing a place of hearing will exercise a sound and reasonable discretion and will keep in mind the convenience of the parties and witnesses; and the same considerations form a proper basis for fixing the venue in the proceedings by writ of review in the circuit court.

6. ———: ———: ———: **Question of Law: Mandamus.** The fact that the circuit court held that the place of hearing before the Public Service Commission was not in its county does not conclude the question whether mandamus will lie to compel it to take jurisdiction, for where the facts are undisputed the question becomes one of law, and if they establish legal error mandamus will go.

7. ———: **Place of Hearing: In Different Counties.** Where the hearing before the Public Service Commission for the increase of the rates of a public service corporation located in Kansas City was begun in Jefferson City and a temporary order providing for a surcharge rate until a full hearing could be had was there made, and later the great bulk of the testimony, including that relating to the valuation of the company's properties, was heard by two commissioners in Kansas City, and the argument was made before and the final order was made by the whole commission at Jefferson City, the place of hearing, under Section 111, Laws 1913, page 641, was in Kansas City, and the Circuit Court of Jackson County had jurisdiction of the writ to review said final order. When the commission has formally set a hearing in any county and appears and takes evidence in the case and is authorized and ready to hear and does hear the parties and their counsel, the circuit court of said county has jurisdiction to issue and entertain a writ of review.

> *Held*, by GRAVES, J., dissenting, that the final hearing, which culminated in the order which the circuit court is asked to review, was in Jefferson City, and the jurisdiction to review is in Cole County, and not in Jackson County.

8. **HEARING: Definition.** The term "hearing" has no rigid definition applicable to it in all its uses. Its meaning is to be determined from the character of its use in the statute. In the Public Service Act it is applied to proceedings which do not culminate in a judgment, since the commission does not render judgments in the technical sense. Its principal function as a legislative or administrative agency is to ascertain facts and thereupon declare the applicable rate, regulation or practice; and its hearings include those sittings at which the evidence is produced and heard.

Those parts of the act which provide that the commission, in proceedings for the valuation of properties, may "cause a hearing or hearings to be held at such time or times and place or places as the commission may designate" and others of its provisions, demonstrate that the commission is not confined to a single hearing or a single county in proceedings before it.

9. **JURISDICTION: Review of Order of Public Service Commission: Place of Hearing: Former Adjudications.** The uniform construction of the Public Service Act by the commission, both in setting hearings and in conceding jurisdiction, that the place of hearing is the county in which it has formally set the time and place and has appeared and heard witnesses and their counsel on the matters at issue, and the uniform practice in both circuit courts and the Supreme Court in accepting jurisdiction, have much weight in construing the act on the question of jurisdiction of the circuit court to entertain a writ of review of the commission's order.

10. ———: ———: ———: **The Word "The": Legislative Construction.** The word "the" in the expression "the hearing" used in Section 111 of the Public Service Act of 1913 has been construed by the Legislature itself, in the act, in authorizing hearings in more than one county, and it will not therefore be given a definitive sense.

## Mandamus.

WRIT ISSUED.

*Scarritt, Jones, Seddon & North* and *Lathrop, Morrow, Fox & Moore* for relators.

(1) The Jackson County Circuit Court had jurisdicton of the petition for review herein. (a) Section 127 of the Public Service Act requires that "the provisions of this act shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities." This court has, on several occasions, pointed out that this act is highly remedial and should be liberally construed. State ex rel. v. K. C. Gas Co., 254 Mo. 535; State ex rel. v. Public Service Comm., 259 Mo. 713; State ex rel. v. Public Service Comm., 275 Mo. 201. Having in mind this rule of construction, we seek the intent of the Legislature in providing that an application for a writ of re-

view may be made "to the circuit court of the county where the hearing was held or in which the commission has its principal office." (2) It is perfectly apparent that the Legislature desired to avoid the necessity of bringing all court actions to review orders of the commission in a single circuit court. It is in fact noteworthy that the provision for going into the circuit court of any county where the matter involved was heard by the commission is placed first and given precedence over the right to go into the circuit court of the county where the commission has its principal office. (3) The act provides for and empowers the commission to go from place to place over the State and hold hearings, so it is the evident intention of the act to so provide that it is possible for matters involving public utilities and their patrons to be heard and considered both by the commission and by the court at the place where the parties litigant reside, and the subject-matter of the investigation is situated. To prevent this evident intent of the Legislature from being frustrated, the words, "the hearing" should not be taken too strictly, but should be construed to mean "a hearing" or "any hearing," or at least the important or conspicuous hearing. (4) The act contemplates that many hearings, even in a single controversy, may be held, and that they may be held at different places in the State, to suit the convenience of the parties to the controversy as well as the commission. Section 109 refers expressly to "any hearing by the commission or a commissioner." The very nature of the investigation required to be made by the commission, the number of parties to be heard and the whole spirit of the act contemplate that the commission shall travel throughout the State and have hearings amongst the people and surroundings to be affected. And this is true, although Section 11 requires the principal office of the commission to be at Jefferson City and the act requires the orders and decisions of the commission to be recorded at its principal office. (5) It is entirely possible that the commission might hold a hearing in six or more counties of the State concerning a

single controversy. It might be that each of these several hearings would be of equal importance, so that no one could technically be denominated "the hearing," of the matter. It is not reasonable to suppose that the Legislature intended that in such a case the interested parties could not go into the circuit court of any of the counties where a hearing was had for a review of the decision of the commission, but were restricted to the circuit court of the county where the commission had its principal office. Noyes v. Aid Society, 70 N. Y. 481. (6) It is a well established rule that the interpretation or construction placed on a law by those whose duty it is to administer it, will be given great, if not controlling, weight by the courts. Ross v. Ry. Co., 111 Mo. 18; State ex rel. v. Severance, 49 Mo. 404; U. S. v. Ala. G. S. R. Co., 142 U. S. 615; Pennoyer v. McConnaughy, 140 U. S. 1. The Public Service Commission has repeatedly acted upon the construction of the act which would give to the circuit court of the county where a hearing was had, jurisdiction to review the commission's orders. In this very case the commission filed their answer and return and entered their appearance in the petition for review in the Circuit Court of Jackson County, without questioning the jurisdiction of that court. The records of this court show that it has been quite customary for writs of review to be entertained and heard by circuit courts in the county where a hearing has been had by the commission. Mo. Southern Ry. Co. v. Public Service Com., 214 S. W. 379; State ex rel. Pub. Serv. Com. v. Mo. Southern Ry. Co., 214 S. W. 381; State ex rel. Danciger v. Pub. Serv. Com., 275 Mo. 483, 205 S. W. 42; State ex rel. Wabash Rd. v. Pub. Serv. Com., 271 Mo. 155; State ex rel. M. K. & T. Ry. v. Pub. Serv. Com., 271 Mo. 270; State ex rel. United Rys. Co. v. Pub. Serv. Com., 270 Mo. 429; State ex rel. Rds. v. Publ. Serv. Com., 269 Mo. 63. (7) Any question as to the jurisdiction of the Jackson County Circuit Court was waived when the Commission filed its answer and return to the writ of review. Commonwealth v. McAllister, 1 Watts (Pa.) 307; State ex rel. Reider v. Moniteau Co. Ct., 45

Mo. App. 387; State v. Schneider, 47 Mo. App. 669; State ex rel. v. Souders, 69 Mo. App. 474; Tod v. Chrisman, 123 Iowa, 693; Chambers v. Lewis, 9 Iowa, 583; Baker v. Superior Court, 71 Cal. 583; State ex rel. v. Weinfurther, 66 N. W. 702; Mac Fall v. Dover, 70 N. J. L. 521; N. C. Corp. Comm. v. Southern Ry. Co., 151 N. C. 447; Specht v. Central Passenger Ry. Co., 68 Atl. 788.

*John H. Lucas* for defendant.

(1) A writ of mandamus will not lie in the instant case. The question of fact was involved, namely, the county in which the hearing was had. Where facts are disputed the lower court determines its jurisdiction on the facts before it. State ex rel. v. Mills, 231 Mo. 500; Coleman v. Dalton, 71 Mo. App. 24; State ex rel. v. Sea, 23 Mo. App. 623; State ex rel. v. Johnson, 266 Mo. 671; State ex rel. v. Jones, 155 Mo. 576; State ex rel. v. Smith, 104 Mo. 424; Holland v. Railroad Co., 134 Mo. 479; Smith v. Perryman, 272 Mo. 375; Cole v. Ricketts, 111 Mo. App. 105; Hammond v. Darlington, 109 Mo. App. 333. In the instant case the statute itself provides the method of procedure by way of appeal. Laws 1913, p. 644, sec. 14. State ex rel. Hillar v. Thornhill, 174 Mo. App. 369; State ex rel. v. Life Ins. Co., 169 Mo. App. 354; State ex rel. v. Dreyer, 183 Mo. App. 463; State ex rel. v. Hudson, 226 Mo. 239; State ex. rel. v. Spring Electric Co., 232 Mo. 130; State ex rel. v. Calhoun, 211 S. W. 111. (2) The Act of 1913, p. 641, relating to jurisdiction of the court is void as to the Circuit Court of Jackson County, in violation of the Constitution, the same being both special and local. Sec. 53, Art. 4, subdivision 17, subdivision 53; Henderson v. Koenig, 168 Mo. 356; State v. Anslinger, 171 Mo. 600; State ex rel. v. Borden, 164 Mo. 221; State ex rel. v. Turner, 210 Mo. 83; State ex rel. Barker v. Southern, 265 Mo. 275. (3) The respondent correctly construed the statute. To save the same from unconstitutionality, jurisdiction is held to be in the Circuit

Court of Cole County. St. Louis v. Mo. Pacific Ry. Co., 262 Mo. 720; State ex rel. v. Gordon, 266 Mo. 394; State ex rel. v. Farmer, 271 Mo. 306. (a) A general clause will yield to a special one where there is conflict. State ex rel. v. St. Louis, 241 Mo. 231; Hershe v. Roach, 258 Mo. 541; Hershe v. Revelle, 258 Mo. 568; Wilkinson v. Thom, 194 Mo. App. 173. (b) In the instant case, the evidence having established the fact that the hearing, both in fact and in law, being in Cole County, the jurisdiction under the Commission Act was properly held to be in the circuit court of that county. Above authorities; State ex rel. v. Flannely, 96 Kan. 380; Cole v. Rickett, 111 Mo. App. 105; Hammond v. Darlington, 109 Mo. App. 333; 2 Bouvier's Law Dictionary (3 Rev.), p. 429; 25 R. C. L. secs. 207, 211, 213, 953, 956, 957; 7 R. C. L. secs. 61, 1032.

BLAIR, J.—This is a proceeding by mandamus to compel Hon. Thomas J. Seehorn, Judge of the Jackson County Circuit Court, to take jurisdiction and proceed to hear and determine the issues made on writ of review sued out against the Public Service Commission of Missouri. Relators are the petitioners who secured the issuance of the writ of review.

The Kansas City Light, Heat & Power Company is a corporation engaged in furnishing electrical energy and steam heat to the public in Kansas City, Missouri. In 1918 this company applied to the Public Service Commission for an increase in rates and filed the proposed schedules. Kansas City filed a protest. On June 12, 1918, the commission issued its notice that it had "set the above entitled cause for hearing before the commission on Monday, June 24, 1918, at the office of the commission in Jefferson City, Missouri." June 14, 1918, the commission made an order staying the proposed rates for a period ending October 28, 1918. June 22, 1918, many consumers, including relators, filed their protest against the proposed rates. June 24, 1918, the Light Company moved for a complete valuation of its property and "accounting examination of books."

June 24, 1918, a hearing was had at Jefferson City before Commissioners Busby, Bean, Blair and Simpson, "at which testimony of certain witnesses offered by the Kansas City Light, Heat & Power Company was heard. But no evidence was then offered on behalf of any other party to the said proceeding because it was not convenient to do so and because of the assurance then given by the said commission that a temporary order only was contemplated in the near future and that at a later date a full hearing would be had, probably at Kansas City." June 25, 1918, the Public Service Commission gave notice that it had set the cause "for further argument and introduction of further testimony, July 3, 1918, at 9 a. m. at the office of the commission, in Jefferson City, Missouri." On that date further argument was had, and the Light Company offered two additional witnesses "solely in regard to whether the Kansas City Light, Heat & Power Company should be granted a temporary surcharge for electric current pending further hearing and determination of the case." Thereafter, August 13, 1918, the commission entered its order permitting the Light Company, until further order of the commission, to collect charges for electrical energy in accordance with previously established rates, plus a surcharge of ten per cent; prohibiting the collection, for steam heating service, of any sums in excess of previously established rates, "until further order by this commission;" directing the commission's engineering and accounting departments "to bring the valuation and audit of the combined properties and of the electric department and heating department down to date;" "that the commission fully retain jurisdiction of the parties and subject-matter of the cause upon the evidence as may be offered for the purpose of making any modification of this order, or supplementary orders herein, at any time it may deem just and proper;" that the order should take effect September 1, 1918, and a copy be served on all parties affected.

No motion for rehearing was filed or writ of review sued out.

May 26, 1919, the commission issued notice that it had set ''the above entitled cause for further hearing before the commission on Tuesday, June 10, 1919, at 10 o'clock a. m., at the Baltimore Hotel, Kansas City, Missouri, at which time and place you will be given an opportunity to be heard.''

The record returned by the commission pursuant to the writ of review set out the foregoing notice and then recites:

''And thereafter, on the 10th, 11th and 12th days of June, 1919, before commissioners Busby and Flad, the following testimony was duly taken down by a reporter: 'State of Missouri, Public Service Commission. At a hearing held by the Public Service Commission at Kansas City, Missouri, on the tenth, eleventh and twelfth days of June, 1919. Present: William G. Busby, Chairman, Edward Flad, commissioners. In the matter of the application of the Kansas City Light, Heat & Power Company for increase in rates for electrical current and steam heat.''

Then follows the names of intervenors, including relators and the appearances. Then:

''Chairman Busby: Gentlemen, we will call this case. I will ask the attorneys present to let the reporter have your names and the parties whom you represent. Very well, gentlemen, as I understand the case it involves lighting and heating and power rates. I presume the company has the laboring oar.''

Thereafter the record returned under the writ of review set forth all the evidence taken by the commission at that hearing.

''On the 10th, 11th and 12th days of June, 1919, pursuant to the said notice, a hearing was held at Kansas City, Missouri, before said Public Service Commission, Commissioners Busby and Flad sitting; the testimony of a large number of witnesses offered by Kansas City Light & Power Company, by the City of Kansas City, and by the consumers of Kansas City

Light & Power Company, including these relators, and by the Public Service Commission, was introduced and heard. The transcript of the evidence of said witnesses, exclusive of exhibits, covers 385 typewritten pages. At this hearing, in addition to the evidence of witnesses just referred to, the reports of the engineers and the accountants of the commission, covering the valuation of the property of Kansas City Light & Power Company, and the examination of its books and records, were introduced in evidence and heard; and also full and complete reports presented by experts of the Kansas City Light & Power Company, and by experts employed by the consumers and by Kansas City, were offered and heard. These reports were voluminous."

June 14, 1919, the commission issued notice that June 14, 1919, it had set "the above entitled cause for final hearing and argument on Friday, the 27th day of June, 1919, at 10 o'clock a. m., at Jefferson City, Missouri, at which time and place you will be given an opportunity to be heard. On June 27, 1919, the company offered two additional witnesses and one of the commission's accountants was heard. The transcript of this testimony covered 43 pages. The parties were then given time to file briefs, and the argument of the matter was set for July 14, 1919, at Jefferson City, Missouri." At the time and place named the parties presented their arguments.

On September 27, 1919, the commission filed its report and entered its order authorizing the Light Company to charge increased rates for electricity and steam heat, effective October 20, 1919. In its report the commission states that "hearings" were held June 24 and July 3, 1918, and a temporary order made August 13, 1918, and that "further hearings were held by this commission at Kansas City on June 10, 11 and 12, and at Jefferson City on June 27, 1919, at which evidence was introduced by all parties in this case and by the commission engineers and accountants. This case was submitted for final decision on the evidence taken and the briefs of counsel for the company and in-

terveners.'' Motions for rehearing were filed October 18, 1919, by Kansas City and the interveners, and the motions were set down for argument on October 30, 1919. On October 18, the final order was modified. On October 30, 1919, the arguments on the motions for rehearing were heard, and the motions were overruled on November 13, 1919.

November 29, 1919, relators applied to the Circuit Court of Jackson County for a writ of review, and on the same day the writ was issued. December 15, 1919, the commission, in obedience to the writ, transmitted to the Circuit Court of Jackson County ''a full, true and complete certified copy of the record, and all proceedings and testimony, together with all the original exhibits in the matter of the application of the Kansas City Light, Heat & Power Company for increase in rates for electrical current and steam heat.''

On the same day the Light Company, by leave of court, filed its plea to the jurisdiction of the Jackson County Circuit Court, alleging (1) that the act attempting to confer jurisdiction is void and in violation of subdivisions 17 and 32 of Section 53 of Article IV of the Constitution of Missouri; and (2) that the court had no jurisdiction because the ''cause was not heard within the jurisdiction of this court, namely, at Kansas City, but the hearing thereof was at Jefferson City, in the County of Cole, and in the State of Missouri.''

The cause was continued to December 22, 1919, and interveners and counsel for the commission announced they were ready for trial. Thereupon counsel for the Light Company presented the plea to the jurisdiction of the court. Relators moved to strike out this plea because: (1) Relators and the commission had submitted themselves to the jurisdiction of the court and the jurisdiction could ''not lawfully be impeached by the Kansas City Light, Heat & Power Company, which is not a party to the above entitled suit;'' (2) ''the main and conspicuous hearing'' was held at Kansas City, as shown ''by the answer and return and records

of the said commission filed and made a part thereof;'' and '(3) ''upon the entire answer and return'' of the commission, including their records as returned, the court had jurisdiction. Thereupon the court overruled the motion to strike out the plea to the jurisdiction, and that plea was submitted ''upon the answer and return of the Public Service Commission of Missouri, including the record of its proceedings filed with and made a part of said return; and thereupon the court sustained said plea to the jurisdiction of this court in the said cause for want of jurisdiction to hear and determine the said writ of review.'' Relators excepted and moved the court to proceed with the cause, but it refused to do so.

Relators' petition (which here stands for the alternative writ, in view of respondent's consent thereto) alleges that the preceding allegations set out all the record of the commission necessary to a determination of the question of jurisdiction.

The prayer is that the circuit court be compelled to proceed with and hear and determine the cause.

Respondent waives the issuance of the alternative writ and demurs to the petition because, he says: (1) the petition does not state facts sufficient to constitute a cause of action against him; (2) the facts stated do not warrant the issuance of a peremptory writ; and (3) under all the facts stated respondent is without jurisdiction or authority to proceed.

I. Respondent contends mandamus will not lie because the statute (Sec. 114, Laws 1913, p. 644) provides a remedy by appeal. It is the general rule that manda-

Remedy.
mus will not lie if there exists a specific and adequate remedy by appeal or writ of error. [Byrne v. Harbison, 1 Mo. 225; Williams & Wyan v. Judge, 27 Mo. 225; Blecker v. Commissioner, 30 Mo. 111; State ex rel. v. Lubke, 85 Mo. 338; State ex rel. v. Buehler, 90 Mo. l. c. 570; State ex rel. v. Smith, 104 Mo. l. c. 668; State ex rel. v. Smith, 105 Mo. l. c. 9; State ex rel. v. Field, 107 Mo. l. c. 450; State ex rel. v. County Court, 109 Mo. l. c. 252; State ex rel. v.

McKee, 150 Mo. l. c. 244; State ex rel. v. Fort, 180 Mo. l. c. 108, 109; State ex rel. v. Thurman, 232 Mo. l. c. 164, 165.] One obstacle to the application of this rule in this case is that the trial court has entered no judgment from which an appeal would lie. It did not dismiss the cause, but merely refused, *ab initio*, to proceed with it, on the ground that it was without jurisdiction to do so. [State ex rel. v. Laughlin, 75 Mo. 358; State ex rel. v. McElhinney, 246 Mo. 44.] Further, the writ may go in many cases despite the fact the court has acted, if such court has, on misapprehension of a plain rule of law, declined jurisdiction. [State ex rel v. Philips, 97 Mo. l. c. 341 et seq.; State ex rel. v. O'Bryan, 102 Mo. l. c. 259; State ex rel. v. Court, 73 Mo. 560.] The fact that the statute (Sec. 114, supra) provides for an appeal after judgment does not destroy the superintending control of this court.

II. The statute (Sec. 111, Laws 1913, p. 641) provides that writs to review orders of the Public Service Commission may be sued out of "the circuit court of the county where the hearing was held or in which the commission has its principal office." It is argued this provision, in so far as it attempts to confer jurisdiction on a court of the county "where the hearing was held" is in conflict with subdivisions 17 and 32 of Section 53 of Article IV of the State Constitution.

Special Law: Venue.

Section 53 provides that "the General Assembly shall not pass any local or special law. . . .

"(17) Regulating the practice or jurisdiction of . . . courts.

"(32) Legalizing the unauthorized or invalid acts of any officer . . . In all other cases where a general law can be made applicable, no local or special law shall be enacted."

It is argued that the act "conferring jurisdiction on the circuit court of the county where the hearing is held localizes the jurisdiction and specializes the action; in other words, determines the forum by the act of the

commission in hearing or refusing to hear at any other place than Jefferson City;'' and that by striking out the clause thus objected to a general law will be left which will apply to all cases.

The statute vests all circuit courts with potential jurisdiction. Jurisdiction of a particular court to issue a writ of review in a particular matter is made to depend upon the fact that the hearing was held within its jurisdiction or the commission has its principal office therein. Authority is given the commission (Sec. 107, Laws 1913, pp. 638, 639) to fix the time and place of hearings and give notice thereof. The statute includes all parties and all courts in the sense that all circuit courts may take jurisdiction on stated conditions. The condition that jurisdiction shall depend upon a hearing having been held (the condition complained of) is not an unreasonable one; and this is the test. [State ex inf. v. Southern, 265 Mo. l. c. 286.] The presumption is that the commission in fixing a place for a hearing will exercise a sound and reasonable discretion and will keep in mind the convenience of the parties and witnesses. The same considerations form a proper basis for fixing the venue in the proceedings by writ of review. Most venue statutes are founded upon some such classification. It does not appear beyond reasonable doubt that the objection made to the act is sound.

III. Respondent contends that, in any event, the jurisdiction of the circuit court was dependent upon the fact that a hearing was held in Jackson County; that the court determined the fact adversely to relators, and, therefore, mandamus will not lie. The general rule so reads. That rule does not apply to this case, because there was no controversy about the facts in the circuit court, and there is none here. All the facts were of record there and are conceded here. The question determined by the circuit court was whether the commission's proceedings at Kansas City, there being no dispute about what those proceedings were, constituted such a hearing as to vest

Questions of Law and Fact.

Jackson County Circuit Court with jurisdiction to issue a writ of review. As in State ex rel. v. Homer, 249 Mo. 58, the circuit court, upon undisputed facts, determined a pure question of law, and mandamus lies to set it in motion in case it, by reason of legal error in this preliminary matter, refused to proceed. [State ex rel. v. Shackelford, 263 Mo. 1. c. 59.] The court's power to act depends upon special statutory authority and upon a condition precedent fixed by the statute. In such case it could have no jurisdiction save under the condition named in the statute (Blankenship v. Blankenship, 100 S. E. 1. c. 540, 541) and cannot act in the absence of evidence tending to prove the existence of the condition. [In re Paulsen's Estate, 179 Cal. 528; Kansas City v. Commission, 103 Kan. 473.] In this case the question is one of law.

IV. The question determinative of this case is whether the proceedings at Kansas City constituted such a hearing under Section 111, Laws 1913, p. 641, as to confer upon the Circuit Court of Jackson County jurisdiction to issue the writ of review to the Public Service Commission. The statute reads that upon stated conditions not in controversy here, "the applicant may apply to the circuit court of the county *where the hearing was held* . . . for a writ of review."

**Place of Hearing.**

To recapitulate: On June 12, 1918, the commission gave notice that the cause was set "for hearing" at Jefferson City on June 24, 1918. On that date a hearing was had at Jefferson City before four of the commissioners and some evidence taken on the part of the Light Company and on the part of no others, because the commission assured them "that a temporary order, only, was contemplated in the near future and that at a later date a full hearing would be had, probably at Kansas City." On June 25th notice was given that the commission had "set the cause for further argument and introduction of further testimony if desired" on July 3, 1918, at Jefferson City. On July 3, 1918, further ar-

gument and testimony on the part of the Light Company "solely in regard to whether the Kansas City Light, Heat & Power Company should be granted a temporary surcharge for electric current, pending further hearing and determination of the case, and, if so, in what amount." August 13, 1918, the temporary order granting the surcharge was entered. Nearly ten months later the commission gave notice that it had set the "cause for further hearing before the commission" on June 10, 1919, at Kansas City. At that time and place, before Commissioners Busby and Flad, the great bulk of all the testimony upon which the case was subsequently decided, was introduced. It was at this hearing that the results of the valuation made by the commission's engineers and accounts were laid before the commission, and the experts employed by the Light Company and the consumers were also heard, as were other witnesses.

By due notice the commission set the cause "for final hearing and argument" at Jefferson City on June 27, 1919. Two additional witnesses were heard, and the matter was argued and submitted. September 27, 1919, the commission rendered its decision.

Section 12, Laws 1913, page 564, provides that meetings of the commission may be held "at any time or place within the State. Any investigation, inquiry or hearing which the commission has power to take or hold may be undertaken or held by or before any commissioner. All investigations, inquiries, hearings and decisions of a commissioner shall be and be deemed to be the investigations, inquiries, hearings and decisions of the commission, and every order and decision made by a commissioner, when approved and confirmed by the commission and ordered filed in its office, shall be and be deemed to be the order of the commission." It follows from this provision that the proceedings at Kansas City were as much the proceedings of the commission as if all the commissioners had their bill present.

Section 45, 46, 69 and 92, Laws 1913, pp. 582, 583,

603 and 626, disclose that the terms "investigation," "inquiry" and "hearing" are not used as synonyms, and Sections 47, 70, 93 and 105a of the same act show that in the proceeding under examination the commission was engaged in a "hearing" or "hearings" under the act. A complaint had been filed, adversary parties had appeared, and evidence was offered.

Paragraph 2, Section 18 of the act, provides that the commission "shall conduct a hearing and take testimony relative to any pending legislation with respect to any person, corporation or matter within its jurisdiction, if requested to do so by the Legislature or either branch thereof or by the Governor," and report its conclusions.

Section 24 provides that: "All hearings before the commission or a commissioner shall be governed by rules to be adopted and prescribed by the commission. And in all investigations, inquiries or hearings the commission or a commissioner shall not be bound by the technical rules of evidence. No formality in any proceeding nor in the manner of taking testimony before the commission or any commissioner shall invalidate any order, decision, rule or regulation made, approved or confirmed by the commission."

Section 47 provides that "whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint" that the regular rates, regulations, etc., or excursion or commutation rates, etc., are unjust. or unreasonable, it is required to order such changes therein as shall be just and reasonable. Provisions of this character are repeated many times in the act.

Sections 48, 70 and 94, applicable here by virtue of Section 105a, provide for a complaint against proposed rate increases. The three sections are almost identical in language. Section 70 reads as follows:

"*Power of Commission to. Stay Increased Rates.*—

Whenever there shall be filed with the commission by any gas corporation, electrical corporation, water corporation

or municipality any schedule stating a new rate or charge, or any new form of contract or agreement, or any new rule, regulation or practice relating to any rate, charge or service or to any general privilege or facility, the commission shall have, and it is hereby given, authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders without answer or other formal pleading by the interested gas corporation, electrical corporation, water corporation or municipality, but upon reasonable notice, to enter upon a hearing concerning the propriety of such rate, charge, form of contract or agreement, rule, regulation or practice, and pending such hearing and the decision thereon, the commission upon filing with such schedule, and delivering to the gas corporation, electrical corporation, water corporation or municipality affected thereby, a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, form of contract or agreement, rule, regulation or practice, but not for a longer period than one hundred and twenty days beyond the time when such rate, charge, form of contract or agreement, rule, regulation or practice would otherwise go into effect; and after full hearing, whether completed before or after the rate, charge, form of contract or agreement, rule, regulation or practice goes into effect, the commission may make such order in reference to such rate, charge, form of contract or agreement, rule, regulation or practice as would be proper in a proceeding initiated after the rate, charge, form of contract or agreement, rule, regulation or practice had become effective; Provided, that if any such hearing cannot be concluded within the period of suspension, as above stated, the commission may, in its discretion, extend the time of suspension for a further period not exceeding six months. At any hearing involving a rate sought to be increased after the passage of this act, the burden of proof to show that the increased rate or proposed increased rate is just and reasonable shall be upon the gas corporation, electrical

corporation, water corporation or municipality, and the commission shall give to the hearing and decision of such questions preference over all other questions pending before it and decide the same as speedily as possible.''

By Sections 60, 78 and 101 (also applicable by virtue of Section 105a) the commission is authorized to ascertain the value of the properties of public service corporations. It is enacted that:

"For the purpose of ascertaining the matters and things specified in this section, concerning the value of the property of gas corporations, electrical corporations and water corporations, the commission may cause a hearing or hearings to be held at such time or times and place or places as the commission may designate. Before any hearing is had the commission shall give the gas corporation, electrical corporation or water corporation affected thereby at least thirty days' notice, specifying the time and place of such hearing, and such notice shall be sufficient to authorize the commission to inquire into the matters designated in this section, but this provision shall not prevent the commission from making any preliminary examination or investigation into the matters herein referred to, or from inquiring into such matters in any other investigation or hearing. All gas corporations, electrical corporations and water corporations affected shall be entitled to be heard and to introduce evidence at such hearing or hearings. The commission is empowered to resort to any other source of information available. The evidence introduced at such hearings shall be reduced to writing and certified under the seal of the commission. The commission shall make and file its findings of fact in writing upon all matters concerning which evidence shall have been introduced before it which in its judgment have bearing on the value of the property of the gas corporation, electrical corporation or water corporation affected. Such findings shall be subject to review by any circuit court of this State in the same manner and within the same time as other orders and decisions of the commission. The find-

ings of the commission so made and filed, when properly
certified under seal of the commission shall be admissible
in evidence.  . . .   The commission may from time to
time cause further hearings and investigations to be had
for the purpose of making revaluations or ascertaining
the value of any betterments, improvements, additions or
extensions made by any gas corporation, electrical cor-
poration or water corporation subsequent to any prior
hearing or investigation, and may examine into all mat-
ters which may change, modify or affect any finding
previously made, and may at such time make findings of
fact supplementary to those theretofore made.  Such
hearings shall be had upon the same notice and be con-
ducted in the same manner, and the findings so made
shall have the same force and effect as is provided here-
in for such original notice, hearing and findings: Pro-
vided, that such findings made at such supplemental hear-
ings or investigations shall be considered in connection
with and as a part of the original findings except in so
far as such supplemental findings shall change or modify
the findings made at the original hearing or investiga-
tion.''

It is also prescribed that in fixing rates the com-
mission must have "due regard among other things to a
reasonable average return upon the capital actually ex-
pended," etc.

Section 106 provides that "the commission shall fix
the time and place when a hearing will be had upon the
complaint and shall serve notice thereof."

Section 109 reads as follows:

"At the time fixed for any hearing before the com-
mission or a commissioner, or the time to which the
same may have been continued, the complainant and the
corporation, person or public utility complained of, and
such corporations and persons as the commission may
allow to intervene, shall be entitled to be heard and to
introduce evidence.  The commission shall issue process
to enforce the attendance of all necessary witnesses.
. . . . A full and complete record of all proceedings

before the commission or any commissioner on any formal hearing had, and all testimony shall be taken down by a reporter appointed by the commission, and the parties shall be entitled to be heard in person or by attorney.''

Unless the proceedings of the commission at Kansas City satisfy the statute, in that they constituted a ''hearing'' under Section 111, supra, the Jackson County Circuit Court had no jurisdiction to issue a writ of review. [State ex rel. Russell v. Public Service Commission, 75 Wash. 1. c. 488.] Counsel for respondent contends, in this connection, ''it is not written in the Commission Act that an applicant may apply to the circuit court of the county where *any part* of the hearing was held, but the language is explicit, *'where the hearing was held.'* '' Counsel for relators contend that (1) the statute means that if any hearing is held in a county, the circuit court thereof has jurisdiction; (2) if the word ''the'' is to be held to its strict and definite sense, then ''the hearing'' of Section 111 is ''the main or conspicuous hearing.'' Under respondent's view it would seem that if parts of the proceedings on a complaint occur in more than one county, no court takes jurisdiction by reason thereof and all such proceedings are reviewable in Cole County only, since the commission has its principal office there. Relators' view is that if a proceeding like that held in Kansas City is held in any county, then the circuit court of any such county has jurisdiction under Section 111.

The meaning of the word ''hearing'' in the statute is to be determined from the character of its use in the statute. [Am. Grain Sep. Co. v. Separator Co., 202 Fed. 1. c. 205.] In equity, ''hearing'' is a term with a well understood content. Technically, it is ''the trial of the case, including the introduction of evidence, the argument of the solicitors, and the decree of the chancellor.'' [Joseph Dry Goods Co. v. Hecht, 120 Fed. 763, citing 10 Ency. Pl. & Pr. 8; Babcock v. Wolf, 70 Iowa, 1. c. 679, citing 1 Bouv. Law Dict. 745.] Such is a final hearing. [Miller v. Tobin, 18 Fed. 1. c. 616.] In Merritt v. Village, 8 Hun, 1. c. 45, it was held that ''hearing'' as applied

to proceedings of village commissioners of assessment, "simply means the receiving of facts and argument thereon for the sake of deciding correctly." As applied to courts, the word is said to be "generally understood as meaning a judicial examination of the issues between the parties, whether of law or of fact." [Glennon v. Britton, 155 Ill. l. c. 243.] With respect to a complaint against the apportionment of paving costs, it was said that: "The very essence of a hearing, however, is the right, not simply the privilege, 'to support one's contention or position by argument, however brief; and, if need be, by proof, however informal' before a tribunal authorized to act and willing and ready to do so." [Denver v. Investment Co., 49 Colo. l. c. 249.] In Bridge Co. v. Un. & North'd Cos., 232 Pa. St. l. c. 269, a hearing is defined as "the receiving of facts and arguments thereon for the sake of deciding correctly." It includes an examination of the issues whether of law or fact. [Waterman & Sons v. Soliday, 121 N. E. (Mass.) l. c. 154.] In courts of equity, as well, not all hearings are final hearings. [Akerly v. Vilas, 24 Wis. l. c. 171; Galpin v. Critchlow, 112 Mass. l. c. 343.] It appears from these authorities that the term has no rigid definition applicable to it in all its uses. [McArthur Bros. Co. v. Com., 197 Mass. l. c. 140.] In the statute it is applied to proceedings which do not culminate in a judgment, since the commission does not render judgments in the technical sense. That tribunal's principal function as a legislative or administrative agency is to ascertain facts and thereupon declare the applicable rate, regulation, practice, etc. Its hearings include those sittings at which the evidence is offered by the parties. This follows from the general definitions quoted as well as from the statute itself. The proceeding at Kansas City was a hearing. It was so designated by the commission and is conceded by respondent to be "a part of a hearing." The valuation of the company's property was made in this case and was an important part of

it. The statute (Sections 60, 78, 101 and 105a) expressly provides that in proceedings for valuation of properties, the commission may "cause a hearing or hearings to be held at such time or times and place or places as the commission may designate."

These provisions and others quoted disclose that the Legislature had no intention to confine the commission to a single "hearing" in proceedings before it. The statute (same sections) also provides, that valuation proceedings are "subject to review by any circuit court of this state in the same manner and within the same time as other orders and decisions of the commission." That this gives jurisdiction only to courts in whose counties hearings are held is made clear by Section 111, which declares that "no court of this State, except the circuit court to the extent *herein specified* and the Supreme Court on appeal, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission . . . It appears from this that the Legislature specially authorized, in one set of circumstances, different hearings at different places, and has ordained that the circuit court of the county in which "the hearing" was held shall have jurisdiction to issue writs of review to determine the legality of orders resulting from such hearings. It is also true that it had in mind, in the case of complaints against rate increases, the fact that the "hearing" of the complaint might not be completed short of ten months; an unusual period of duration for a single hearing. For the purposes of jurisdiction, under Section 111, we think that when the commission has formally set a hearing in any county and appears and takes evidence in the case and is authorized and ready to hear and does hear the parties and their counsel, the circuit court of such county has jurisdiction to issue a writ of review. Such has been the construction of the act by the commission and its counsel, both in setting hearings and in conceding jurisdiction in this and other cases. Such, too, apparently, has been the view of the circuit courts, and of this

court on appeal, in accepting jurisdiction in such circumstances, as appears from the cases cited by relators. Such considerations have much weight in the construction of a statute in proper cases.

It is argued that the word "the" in the expression "the hearing" in Section 111 is of rather controlling force. As already pointed out, the Legislature itself, in the act, has construed that expression to apply to cases in which it authorized hearings in more than one county, and in which cases the statute would be meaningless unless it gave jurisdiction to the court in each county in which a hearing was held. After such a construction by the Legislature, we are not inclined to give to the word "the" in this act such a definite sense as counsel ascribes to it. Nor do the authorities require it in such a case. [Noyes v. Children's Aid Society, 70 N. Y. l. c. 484; Penn, Mut. Life Ins. Co. v. Henderson, 244 Fed. l. c. 880. In view of these things and the requirement of the act (Sec. 127) that "the provisions of this act shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities," we are of the opinion that the Circuit Court of Jackson County had jurisdiction to issue, hear and determine the writ of review here involved. The peremptory writ is awarded. All concur except *Graves, J.*, who dissents in separate opinion.

GRAVES, J. (dissenting).—I do not agree to the result of this opinion. I agree to much that is said in the opinion. I agree that where the facts as to jurisdiction are undisputed, the matter of jurisdiction is then a question of law, and the judgment of the trial court as to jurisdiction is not final in an action like the one at bar. I agree that the facts are not disputed herein, so that we have a question of law. But I do not agree, that, under the law, "the hearing" before the commission was at Kansas City. The final hearing, which culminated in the order, was at Jefferson City, and the jurisdiction

is in Cole County and not in Jackson County. Judge SEEHORN so held, and he is right in the matter. I therefore dissent.