**In re L. L. W., a minor.**

**No. 12032.**

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 11, 1981.

Richard Goldstein, Sikeston, for appellant.

No appearance for respondent.

TITUS, Judge.

On August 26, 1980, the Juvenile Officer of the 33rd Judicial Circuit filed his petition in the Juvenile Court of Mississippi County charging that L. L. W., then 16 years and 11 months of age, on or about August 9, 1980, committed the class C felony denounced in § 566.040 [1] by having sexual intercourse with a 15-year-old female. The petition further alleged that because of the violation, L. L. W. was in need of the care, treatment and services of the court, etc. Counsel for the indigent juvenile was appointed by the court per Rule 116.01. Inter alia, at a "hearing" held September 9, 1980, the court's docket sheet discloses that the juvenile "admits that the allegations of the petition are true" and that the cause was "continued for further hearing on September 30th, 1980." The docket entry made on the last mentioned date, in part, recites: "After further hearing it is ordered that [L. L. W.] be committed to the Division of Youth service (sic). It is further ordered . . . that he be placed on probation and released to the custody of his father . . . . It is further ordered . . . [L. L. W.] be held in detention by the Sheriff . . . from September 30th, 1980 until October 7th, 1980 and further ordered to pay the costs of this case . . . ." The juvenile appealed. Rule 120.01. No appearance, by brief or otherwise, has been made in this court on behalf of the juvenile officer.

1. References to statutes and rules not otherwise specified are to Missouri Revised Statutes, 1978, and to Missouri Rules of Court, 11th Ed., 1980.

The points relied on in the juvenile's brief on appeal asseverate the court nisi (1) erred in committing the juvenile to the county jail for seven days because it was without authority to do so; (2) erred in ordering the juvenile to pay the court costs contrary to the provisions of § 211.281; (3) erred in entering its Order of Probation because the court then lacked such authority after having first committed L. L. W. to the Division of Youth Services; and (4) erred in failing, as required by Rule 117.03, to make a record of the testimony, proceedings and hearings in the cause, thereby depriving L. L. W. of a "meaningful review on appeal."

In this case, the record on appeal consists solely of the "legal file," mislabeled "Transcript on Appeal." There is no "transcript" containing those "portions of the proceedings and evidence not previously reduced to written form." Rule 81.12. The legal file (excluding its cover, index, certifications by and a letter from the circuit clerk) is composed of a copy each of (1) the juvenile officer's petition, (2) the docket sheet, (3) Order of Commitment, (4) Order of Probation and (5) Notice of Appeal.

 Points relied on (1) and (3), supra, concern the authority of a juvenile court, once the minor has been committed to the Division of Youth Services, to, first, place the juvenile on probation and, second, to sentence him to seven days in the county jail for the purpose of what is commonly denominated as "shock probation." "Shock probation," under which one condition of probation is that an "adult" convicted defendant was to spend some period of time in the county jail was not authorized by § 549.071, RSMo 1969, even though it permitted the sentencing judge to " 'place the defendant on probation upon such conditions as the court sees fit to impose.' " *State ex rel. St. Louis County v. Stussie,* 556 S.W.2d 186, 189[7] (Mo.banc 1977). We assume that because of this ruling, the General Assembly, per § 559.026, effective Jan. 1, 1979, authorized a trial court to require "as a condition of probation that the defendant submit to a period of detention." Under those parts of § 211.181 applicable here, the juvenile court could either place the child under supervision in his own home or commit him to the custody of an authorized public agency or institution, but it could not do both. However, to be effectuated, the commitment order must not only be properly made but the juvenile must also be *received* by the agency or institution to whose custody he has been committed. As the meager record before us attests, there was no intention that the commitment order was to be finalized by delivering the minor into the care of the Division of Youth Services. Instead, the Order of Probation, made simultaneously with the commitment order, was carried out and implemented together with the "shock probation" imposed. We can only conclude that the commitment order was mere surplusage and a nullity which did not destroy or vitiate the placement order insofar as such order was legally and validly made. *In re A___ N___,* 500 S.W.2d 284, 287–288[2–4] (Mo.App. 1973). We find nothing in the juvenile rules or statutes similar to § 559.026 which even hints of any authority in the juvenile court to impose "shock probation" by placing a minor in a county jail as a condition for not implementing the commitment order or otherwise. In fact, it has been directly held that such treatment is improper and unauthorized. *Boone v. Danforth,* 463 S.W.2d 825, 828[3] (Mo.banc 1971). Counsel for the minor herein urges that although the jail sentence has been served (which our record does not disclose), the question of incarceration is not moot because it is an unlawful action capable of repetition, yet evading review. Cf. *Vitek v. Jones,* 445 U.S. 580, 100 S.Ct. 1254, 1260[1], 63 L.Ed.2d 552 (1980). We rule that "shock probation" by placing a juvenile in jail for whatever time or reason is illegal under the rules and statutes and is not to again be undertaken except where specifically permitted by rule or law. We also hold, as previously noted, that the Order of Commitment herein made and entered was null and void and is now hereby ordered to be stricken from the records of the juvenile court and not to be repeated.

■ Section 211.281 states: "The costs of the proceedings in any case in the juvenile court may, in the discretion of the court be adjudged against the parents of the child involved or the informing witness . . . ." It was clearly erroneous for the court in its Order of Probation to order the juvenile "to pay the costs in this case." Cf. *State ex rel. Cain v. Mitchell*, 543 S.W.2d 785, 786 (Mo. banc 1976). That portion of the Order of Probation requiring the juvenile to pay the costs is reversed.

Unlike § 211.171.4 which makes it optional with the court, Rule 117.03 mandates, since its effective date of August 1, 1976, that "A complete record of all testimony shall be kept by stenographic reporting, . . . ." Albeit the docket sheet in this case refers to a "hearing" and "further hearing," the scant record before us makes it impossible to determine if any "testimony" was actually given during the proceedings and hearings. Under Rule 110.04 it is provided "If no procedure is specifically provided in these Rules, the juvenile court shall be governed by the practice and procedure customary in proceedings in equity, and by Rules 41 through 101 to the extent not inconsistent therewith." In equity, "hearing" is said to be " 'the trial of the case, including the introduction of evidence, the argument of the solicitors, and the decree of the chancellor.' " Proof may be made, however informal, and is not necessarily predicated on testimony. *State ex rel. Case v. Seehorn*, 283 Mo. 508, 528, 223 S.W. 664, 670[7] (banc 1920). However, a reading of Rules 117.01 through 117.05 indicates a "hearing" may or may not include testimony. But regardless of the foregoing speculations as to what is meant by and included in a hearing, the fact remains that any testimony which may have been given is not now available for our consideration.

■ The statement of facts contained within the juvenile's brief is replete with assertions as to what supposedly occurred before the petition was filed and what transpired during the hearings and after the orders of commitment and probation were made. As no transcript was filed, for none was available, we cannot test the accuracy of a large segment of the statement of facts appearing in the brief. Statements in a brief cannot be accepted as a substitute for record proof. *Gonseth v. K & K Oil Company*, 439 S.W.2d 18, 25[12] (Mo.App. 1969); *Rickard v. Rickard*, 428 S.W.2d 919, 923[4] (Mo.App.1968). Although it is our duty to dispose finally of a case unless justice otherwise requires, such duty presupposes a record and evidence upon which we can perform this function with some degree of confidence in the fairness, accuracy and reasonableness of our conclusion. When such a record is not presented, we have no choice but to reverse and remand. *In re Estate of Kranitz*, 610 S.W.2d 300, 304[1] (Mo.App.1980).

As previously stated, this court orders and adjudges as follows:

(1) The Order of Commitment herein entered and made is null and void and is ordered stricken from the records of the juvenile court;

(2) The committing of the juvenile to the county jail was illegal and the court is ordered not to again undertake such a procedure;

(3) That portion of the Order of Probation requiring the juvenile to pay the court costs is reversed; and

(4) Because no proper record of the proceedings was made or submitted to this court, it is not possible for this court to determine the correctness vel non of the actions, rulings and orders of the juvenile court. Therefore, except as to matters determined in paragraphs (1), (2) and (3), supra of this order and adjudgment, the cause is reversed and remanded.

It is so ordered.

PREWITT, P. J., and HOGAN, J., concur.