Chadwick v. Chadwick.

CHADWICK, *Appellant*, v. CHADWICK.

Division One, May 8, 1893.

1. **Mutual Account.** A mutual account arises where there are mutual dealings and the account is permitted to run, with a view of an ultimate adjustment by a settlement and payment of the balance.

2. ———: STATUTE OF LIMITATIONS. Where, in such case, the last item on either side is not barred by the statute of limitations, the whole account is saved from its operation.

3. ———: ———. The fact that the items are all on one side of the account does not, in this state, prevent the last item from drawing after it all the other items, so as to save the bar of the statute of limitations. (*Ring v. Jamison, 66 Mo. 424*).

4. ———: ———. Where a mutual account exists between persons having transactions in cattle, and money is loaned by one to the other at different times, and after the cattle transactions cease no settlement is had, but other loans are made, the presumption arises that the open account continues to such loans.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER, Judge.

REVERSED AND REMANDED.

*Blair & Marchand* for appellant.

(1) That plaintiff's account is a mutual running account we cite: Bus. on Limitations, secs. 192–196, pp. 265–273; *Kimball v. Kimball*, 16 Mich. 211; *Abbott v. Keith*, 11 Vt. 525; *Chambers v. Marks*, 25 Pa. St., 296; *Green v. Disbrow*, 79 N. Y. 1; s. c. 35 Am. Rep. 496; *Hodge v. Manley*, 25 Vt. 210; *Penn's Adm'r v. Watson*, 20 Mo. 13; Angell on Limitations, secs. 130–135, p. 139; *Kimball v. Brown*, 7 Wend. 322. (2) In this case defendant sets up his accounts as set-offs and counterclaims, thereby admitting the *mutuality* of the account and settling between him and plaintiff. The instruction given for plaintiff at the close of the evidence ignored defendant's account entirely, was unwarranted and not the law. *Goddard v. Williamson's Adm'r*, 72 Mo. 131; *Penniman v. Rotch*, 3 Metc. (Mass.) 216; *Chapman v. Goodrich*, 55 Vt. 354; *James v. Clapp*, 116 Mass. 358; *Green v. Disbrow*, 79 N. Y. 1; s. c. 35 Am. Rep. 466; *Becker v. Jones*, 37 Hun (N. Y.) 35; *Cogswell v. Dolliver*, 2 Mass. 217; s. c. 3 Am. Dec. 45; *Norton v. Larco*, 30 Cal. 127; s. c. 89 Am. Dec. 70; Bus. on Limitations, sec. 192, p. 265; sec. 193, p. 269; sec. 196, p. 273. (3) A "running account" is a debt *in solido*, and unless the last item is barred, none is. *Carson v. St. Boat Hillman*, 16 Mo. 256; *Madison Coal Co. v. St. Boat Colona*, 36 Mo. 446; *Boylan, etc. v. St. Boat Victory*, 40 Mo. 244; *Mackey v. Hyatt*, 42 Mo. App. 443. (4) As to whether an account is a mutual account or a running account is a question for the jury. The instruction was therefore, premature and wrong because the court usurped the province of the court sitting as a jury. Bus. on Limitations, sec. 192, pp. 268–269; *Harrison v. Hall*, 8 Mo. App. 167–170.

*W. C. Hollister* for respondent.

The instruction given by the court at the conclusion of the evidence was proper. *Loeffel v. Hoss*, 11 Mo. App. 133; *Phillips v. Mahan*, 52 Mo. 197; *Goddard v. Williamson*, 72 Mo. 131; *Roseboom v. Billington*, 17 John. 182; *Loewer v. Haug*, 20 Mo. App. 163.

BLACK, P. J.—The plaintiff brought this suit on the thirteenth of May, 1889, to recover a balance of $4,647.94, alleged to be due to him from his father, the defendant, on an unsettled account. At the close of the plaintiff's evidence the court, at the request of the defendant, gave this instruction: "The court declares the law to be that the account sued on is barred by the statute of limitations; and the evidence failing to show an agreement that the items of money alleged to have been loaned by defendant to the plaintiff were to be entered as a credit thereon, or that the same was credited on the same with the privity and consent of the defendant, the verdict should be for the defendant." Judgment was entered for the defendant, and the giving of this instruction presents the only question to be considered here.

The account filed with the petition begins on the twentieth of April, 1877, and extends down to July, 1887, covering a period of over ten years. In this account the plaintiff charges the defendant with cash paid for cattle, money paid out for and loaned to the defendant, and expenses of feeding cattle. The items of the account of the character just mentioned cover the period of time from 1877 to and including 1882, aggregating over $13,000. In the same account the plaintiff gives defendant credit for various sums of money, being proceeds arising from sale of cattle and

hogs and for money received from defendant. The subsequent items of the account sued upon are as follows:

| 1883, By cash borrowed | | ........$20 00 |
| By cash borrowed | | ...... 10 00 |
| To cash.. | ...........$5 00 | |
| 1884, Aug. 18, | By cash borrowed | ...... 50 00 |
| 1885, May | By cash borrowed | ...... 5 00 |
| 1886, Nov. | By cash borrowed | ...... 10 00 |
| Dec. | By cash borrowed | ...... 30 00 |
| 1887, May | By cash borrowed | ...... 60 00 |
| July | By cash borrowed | ...... 12 00 |
| July | By cash borrowed | ...... 50 00 |

As these items of credit come down to a period less than five years before the commencement of this suit, it is insisted by the plaintiff that they take the whole account out of the bar of the statute.

The answer is a general denial and a plea of the five-year statute of limitations. In connection with this plea, it is alleged that the items of credit just mentioned for money borrowed by the plaintiff were fraudulently credited on the account to save the whole account from the bar of the statute; that they are $80 in excess of the aggregate amount actually loaned by defendant to the plaintiff; that the true amount of these loans was and is $147, for which plaintiff gave defendant a due-bill in the month of June, 1887.

The defendant for further answer sets up by way of "counterclaim" an account against plaintiff covering the period of time from 1877 to and including 1880, amounting to $4,149. Some of the items of this account are the same that are credited to defendant in the plaintiff's account. For a further "counterclaim" defendant sets up the before mentioned due-bill and the items of money loaned the plaintiff for which it was given.

It appears from the evidence produced by the plaintiff, that he and his father had mutual dealings in

the purchase and sale of cattle from 1877 to and including the year 1882. The plaintiff kept no book account of these transactions, except a few items of expense in purchasing corn and feeding the cattle. The great body of the account, as sued upon, was made up from information obtained from banks and persons and loose memoranda. He, however, produced evidence tending to establish the account covering the period from 1877 to and including 1882. His evidence as to the subsequent credits for money borrowed from his father, and which it is contended take the whole account out of the bar of the statute, is in substance this: He says he borrowed various small sums of the defendant during the years 1883-84-85-86 and '87, and often handed it back in a few days. His evidence tends to show that he still owes the defendant most, if not all, of the items credited in those years. The answer, it will be seen, admits that he borrowed various sums during those years, amounting to $147.

The circuit court gave the instruction in the nature of a demurrer to the plaintiff's evidence upon the theory that the whole account was barred, unless the items of money received by the plaintiff from 1883 to 1887 were actual payments made by defendant on the prior account. The plaintiff's case, as made by the pleadings and the evidence, does not stand on any such a theory of fact. It is not claimed in any of the pleadings or in any of the evidence produced that these items, or any of them, were payments made on a prior account. The claim of the plaintiff and the theory of his case, as made both by his pleadings and by the evidence, is, that there was a mutual open account between them from 1877 down to and including 1887. This being so, the plaintiff's action is not barred, because in that event the statute would not

begin to run until the date of the last item. Revised Statutes, 1879, sec. 3233.

If the ruling of the circuit court can be sustained at all, it is not for the reason given in the instruction, but because the evidence does not tend to show a mutual open account from and after 1882, and this presents the real question to be determined.

Says Angell: "Mutual accounts are made up of matters of *set-off*. There must be a mutual credit founded on a subsisting debt on the other side, or an express or an implied agreement for a set-off of mutual debts. A natural equity arises when there are mutual credits between the parties, or where there is an existing debt on one side which constitutes a ground of credit on the other; or where there is an express or implied understanding, that mutual debts shall be a satisfaction or set-off *pro tanto* between the parties." Angell on Limitations [6 Ed.], sec. 149. In other words, a mutual account arises where there are mutual dealings, and the account is allowed to run with a view of an ultimate adjustment by a settlement and payment of the balance. In such cases, if the last item on either side is not barred by the statute of limitations, the whole account is saved from the operation of the statute. *Penn's Adm'r v. Watson*, 20 Mo. 13.

It seems to be quite generally held that if the items are all on the one side, then the account is not mutual in the sense that the last item will draw after it the items previously charged so as to save the bar of the statute of limitations as to the whole account; but the rule has been otherwise settled in this state. Speaking of our decisions upon this point, it was said: They are to the effect that when the acccunt sued on is a running account and it is fairly inferable from the conduct of the parties while the account was accruing, that the whole was to be regarded as one, as in the

case of a merchant's account against a customer, none of the items are barred by the statute unless all are. *Ring v. Jamison,* 66 Mo. 424.

Now it is perfectly clear that there were mutual unsettled dealings, and therefore a mutual open account between these parties from 1877 to and including 1882. This is shown by the pleadings of the defendant as well as by the pleadings and evidence of the plaintiff. These dealings grew out of the cattle transactions, but they included the loan of money from time to time. While the dealings in cattle ceased in 1882, it is not claimed that the parties then had any settlement or adjustment of their affairs. They continued to deal on a credit with each other, and until the contrary is made to appear, the presumption is that the open account continued. The proof is clear that the plaintiff continued to borrow money from the defendant. Sometimes he paid it back in a few days, but it stands admitted that he still owes the defendant at least $147 by reason of different sums so borrowed after 1882. There is certainly evidence tending to show that the dealings between these parties continued on after 1882. There is therefore evidence tending to show a continuation of the mutual open account down to 1887, and this being so, the court erred in giving the instruction.

This case comes here, not on any finding of the facts, but to review the action of the trial court in sustaining a demurrer to the plaintiff's evidence. In reviewing such a ruling we must take the evidence produced by the plaintiff as true, and we must give to it every inference favorable to him which can be fairly drawn therefrom. A very different case may appear when the defendant produces his evidence. What we say, and all we say as to a mutual account, is that there is evidence tending to show mutual dealings down to

1887, and this being so, the demurrer to the evidence should have been overruled.

As has been said, the defendant sets up a due-bill executed by the plaintiff to the defendant in 1887. The plaintiff in his reply denies that the due-bill was ever delivered to defendant. We find no evidence bearing upon this issue. The question as to what effect should be given to this due-bill, if in fact executed and delivered, as tending to show the only balance due to either party, or as tending to show that there were no mutual dealings after 1882, is not before us on this record. As to such questions, we express no opinion at this time. The judgment is reversed and the cause remanded. BARCLAY, J., absent. The other judges concur.