DANIEL & BELLE GREEVER, Respondent, v. W. F. BARKER, Appellant.

Kansas City Court of Appeals, April 5, 1920.

1. **BOARD: Indefinite Time: Indefinite Compensation: Limitations: Guardian: Contract: Administrator: Right of Action.** A man went to the house of a husband and wife while sick and remained with them for three weeks, they boarded and nursed him, with nothing said as to compensation. They then went with him to his own home (a small farm) and they boarded him and cared for his necessities for near two years, under an agreement without definite time and without specification of what compensation they were to receive further than that they should receive what would be reasonable. Near the end of two years he became insane and a guardian was appointed. The guardian contracted with the husband and wife to board and care for him and keep up the place. The length of their service was indefinite and their compensation not fixed. They cared for him for seven or eight years, when he died, and they presented a claim in the probate court, after the guardian had made final settlement and was discharged, against the adminstrator of his estate for board and expenses in caring for him and the farm. It was *held* that the claim for board and services under the contract with him before he became insane was barred by both the general Statute of Limitations and the specitl statute requiring claims against a guardian should be presented in two years. It was also *held* that they had no right of action against the administrator, but only against the guardian.

2. **RUNNING ACCOUNT: Insane Person: Guardian: Separate Account.** An account against an individual, who becomes insane, continued on against the guardian under an arrangement with him is not a running account so as to take away the Statute of Limitations; it becomes brcken on the appointment of the guardian and thereafter becomes two separate independent accounts.

3. **LIMITATIONS: Demands Arising During the Course of Guardianship.** The statute that all demands against an insane person's estate not presented to the probate court within two years of publication of notice of guardianship shall be barred, does not apply to current claims arising during the course of the guardianship.

4. **INSANE PERSON: Claims: Two Year Bar.** In case of an insane person all demands against the ward or estate existing prior to

guardianship must be presented or exhibited within two years or be barred.

5. **CLAIMS AGAINST GUARDIAN: Administrator: Probate Court.** Claims against the estate of an insane ward cannot be made the basis of a claim against the administrator. They must be presented in the probate court against the estate of the guardian as provided by statute.

6. **CLAIMS: Contract of Guardian: Current Expenses: Exhibition: Final Settlement: Turning Over of Estate: Administrator.** All claims against the estate of an insane ward arising out of contracts made with the guardian for the board and necessities of the ward, including expense of repairs, must be presented to the guardian that they may be included in the guardian's final settlement with the probate court, to the end that the ward's estate may be turned over to his administrator as required by law.

Appeal from Macon Circuit Court—*Hon. Vernon L. Drain,* Judge.

REVERSED.

*J. M. Jayne* for respondent.

*E. O. Jones* and *Campbell & Ellison* for appellant.

ELLISON, P. J.—Plaintiffs are husband and wife. They filed a demand for $5394.16 in the probate court of Scotland county against the administrator of the estate of Aaron Hilbrant, an uncle of the plaintiff wife. The probate judge being wanted as a witness, the case was transferred to the circuit court of Scotland county. Afterwards a change of venue was awarded to the circuit court of Macon county at LaPlata. The cause was referred to a referee by the latter court. He made his report awarding plaintiffs a balance of $2308.41. Defendant filed exceptions to the report which were overruled by the trial court and judgment was rendered for the plaintiffs for that amount. Defendant appealed.

It appears that Aaron Hilbrant died in June, 1915. That in June, 1906, he was brought to the home of plaintiffs (the plaintiff wife being his niece). He was sick

and so continued for three weeks, during which time he was boarded and waited upon by plaintiffs. That he owned a home of his own consisting of about 90 acres of land. That in the latter part of the summer (1906) in which he had been brought to their house, they moved to his farm with the agreement that they would "take care of him, nurse him and provide for his wants, and were to receive for their compensation that which would be reasonable and just."

Afterwards, during the first part of the second year, being January, 1908, he was declared by the probate court incapable of managing his affairs and a guardian was appointed for him, who took charge of his estate and remained in charge 'for more than eight years and up to his death in 1915, when defendant was appointed administrator of his estate. That upon the appointment of the guardian in 1908, he and plaintiffs contracted that plaintiffs would board and care for him and provide him with clothing and other necessities and he (the guardian) "would pay them for said services that which would be just and right under the circumstances."

As stated at the out set plaintiffs filed their demand against the estate in the probate court on the 15th of August. 1915. As will be seen from what we have already stated this demand consisted of items which were authorized by the deceased in the years 1906 and 1907. We say authorized by deceased but we do not mean that they were expressly authorized by him, for there was no evidence of that. But as he went to the house of plaintiffs and remained three weeks while sick, an implied promise arose that he would pay them what it was reasonably worth. And the same may be said of the items of the demand arising after he got well and up to the time of the appointment of his guardian. The items of the account after the appointment in 1908 accrued, of course, against the guardian.

A question of limitation arises which involves two points of view, on two parts of the statute. As the demand was filed in the probate court in August, 1915,

the items against deceased in 1906 and 1907 under his implied contract, having accrued more than five years before presenting the demand, are barred under section 1889, Revised Statutes, 1909, of the general limitation statute, unless the whole demand is a mutual running account in which case, if the last item is within five years the whole account is saved by section 1893, Revised Statutes, 1909.

Now in our opinion this account being composed of accruing with the deceased in his lifetime before he was adjudged insane, cannot be connected with items accruing against the guardian after he became insane. The guardianship necessarily broke the continuity of the account. There was a change in one of the parties. In Gerard B. Allen & Co. v. Mining Co., 73 Mo. 688, 693, the account, originally, was a running account for material for a mechanic's lien between Allen & Co., as a partnership and Einstein & Co., as partnership; each became incorporated as a corpoartion, but continued in furnishing and receiving the material. It was held that the incorporation broke the account. The court said that, ''We are of opinion that the continuity of a running account is broken when the party or firm with whom it is made discontinues business and sells out to another party to whom he also transfers his accounts, although the debtor may thereafter chose to continue dealing with the successor of the person or firm with whom he first dealt.'' The court further said that, ''it required a new contract, either express or implied, to establish an open running account between Einstein & Co. and the corporation of Allen & Co., and this being a distinct account from that made with the firm, a separate lien should have been filed within the time prescribed by law on the account with the firm. The fact that the name of the corporation was the same as that of the firm, and that the stockholders therein were the members of the firm, can make no difference. In the eye of the law, the firm and the corporation are different persons.'' The same thing was decided by this court in

an opinion by HALL, J.: (Henry v. Mahone, 23 Mo. App. 83.) It follows as we have already said that all items of the account prior to the appointment of the guardian were barred by the general Statute of Limitations at the time this action was instituted.

This part of the claim is also barred by the special statute in relation to guardians. In case of an insane person the guardian must take charge of his estate (section 497, Revised Statutes 1909) and all demands against such estate then existing must be presented to the probate court and notice served on the guardian and "All demands not thus exhibited and presented for allowance in two years from publication of notice of the appointment of the guardian shall be forever barred." [Section 498, Revised Statutes 1909.]

The statute just referred to necessarily applies to demands existing at the appointment of a guardian, or, at least, from the publication of notice; and does not comprehend current claims for expense in caring for the ward and his estate during the guardianship.

But the following considerations show that the *entire* demand should have been disallowed. By reference to the statute of "Guardians and Curators of Insane Persons" (sections 474 to 533, Revised Statutes 1909), it will be seen that proceedings in the estate of an insane person in the hands of a guardian are much like those of estates of deceased persons in the hands of an administrator. The guardian must take charge of the estate, give notice of his appointment, execute a bond, file inventory of the estate and have appraisement made. Demands against the estate of the ward must be presented and exhibited in the probate court for allowance, and, as we have said, those not presented within two years are forever barred; and the guardian is to make final settlement of his accounts: That statute (section 521) contemplates that upon the death of the ward, the guardian shall settle his account with the probate court and deliver the estate to the ward's administrator; and to that end he shall make a just and true exhibit of the account

between himself and ward and file the same in the probate court, a copy of which he shall give the administrator with four weeks' notice before the first day of the term of such court when settlement will be made. And at the time specified in the notice, the court shall examine the accounts of such guardian, correct all errors and make final settlement with him.

Undoubtedly accounts against the guardian for expenses of guardianship, under contract with him for services rendered to the ward and to the estate, must be presented to the guardian and included in the settlements made in that court and finally adjusted in the final settlement he makes on the death of the ward, preparatory to delivering the estate to the administrator as required by section 521. It is not within the bounds of probability, or reason, that the statute in relation to the guardianship of wards and their estates, may be ignored at the pleasure of claimants and the settlement of the affairs of the guardianship transferred to the administrator of the estate. The later would be a stranger to the guardianship, the contracts and dealings of the guardian, as well as to the necessities of the ward and to the propriety of action taken by the guardian.

But plaintiffs insist that they may ignore that statute and sue the administrator, as in this case, and cite Reando v. Misplay, 90 Mo. 251, 258, as sustaining them. That case cannot be given that construction. There, there was in fact, no guardian (see page 256). The court in saying that the plaintiff might have sued the guardian, if one had been appointed as required by the statute, could not affect his right to sue the administrator, as such guardianship (illegal though it was) was terminated by the death of the insane party. By this expression the court evidently meant that if there had been an existing legally appointed guardian he would have been the party to be sued. We think it manifest that it was not decided that one with a claim against a guardian, on account of his ward, may ignore the statute during the continuance of such guardianship, and then, after the wards death, present the

claim against the administrator of his estate. The estate must be administrated by the guardian as required by the statute. Such estate may come into the hands of the administrator, after the wards death, by final settlement of the guardian and delivery of the estate and effect to the administrator (Sec. 521, R. S. 1909) but that, of course, does not justify a failure to comply with the plain direction of the law during the course of the guardianship.

The case of Reando v. Misplay, even under the erroneous construction placed upon it by plaintiffs, should have no influence on this case from the fact that it arose under the statutes of 1865 and 1879, which are essentially different from the present statute in the particulars here involved. Those statutes did not provide for the presentation and allowance of claims in the probate court; The guardian settled claims without allowance. [Sec. 5804, R. S. 1879]; nor did they contain a statutory bar after two years, as by our section 498. Nor did they contain section 521, providing, in detail, for the adjustment and final settlement of all current claims against the guardian for expeses of guardianship; though under the later decisions of the Supreme Court in Coleman v. Farrar, 112 Mo. 54, 63-72, much the same power was said to exist by implication from those statutes, and doubtless section 521, Revised Stautes 1909, was incorporated into the law as an express declaration of what the court said was implied. That decision is later than Reando v. Misplay, and we think it is plainly to be seen from it that the court's view is that all matters of the guardianship and claims against the guardianship estate were to be adjusted and settled by the guardian and probate court, and the balance of such estate was to be turned over to the administrator. We are satisfied that plaintiffs' demand with all its complications, running through a period of near *seven years* under a contract with the guardian, could not be bodily shifted from the guardianship statute to that of administration. This is the only conclusion

which can be arrived at from the views of the court as expressed in Coleman v. Farrar.

It is said by plaintiffs that defendant did not plead limitations. The case originated in the probate court where formal pleadings are not required. It is sufficient if the record shows that the party relying on limitations objected to the claim on that account. Even in cases originating in the circuit court, the general statute need not be pleaded by an administrator (Stiles v. Smith, 55 Mo. 363); thus cutting out that part of plaintiff's demand which arose before the appointment of the guardian. And so as to that part arising after the appointment, defendant could take advantage of the special limitation without pleading as we have just stated. But in view of our conclusion that plaintiffs were without right to sue the defendant administrator, the question of limitation on the claim since the appointment, becomes of no particular importance.

The judgment should be reversed. All concur.