BERTHA HOFMANN, RESPONDENT, v. JUSTINE SAWYER, ADMINISTRATRIX C. T. A., ESTATE OF THEODORE BERNHARD HOFMANN, DECEASED, APPELLANT.—50 S. W. (2d) 674.

St. Louis Court of Appeals. Opinion filed June 7, 1932.

150

*Grimm & Mueller* and *Jesse L. Renderer* for appellant.

*Albert L. Schweitzer, Julius H. Drucker* and *Philip S. Alexander* for respondent.

NIPPER, J.—This cause originated in the probate court and is a claim for services rendered. Plaintiff was a daughter of Theodore Bernhard Hofmann, deceased. The first item of the claim was for general housework, washing, cooking, housekeeping, rent collecting, paper cleaning, and supervision of the real estate of the deceased, from February 4, 1913, to February 5, 1923, at $5 per week, making a total of $2,500; the second item was for the same character of service rendered deceased from February 6, 1923, to January 1, 1928, at $10 per week, amounting to $2,475; or an aggregate of $4,975.

The full claim was allowed in the probate court. An appeal was taken to the circuit court, where it was tried before the court without the aid of a jury, and it was again allowed. From this judgment the administratrix has appealed.

On February 28, 1928, Theodore Bernhard Hofmann was declared insane, and a guardian appointed. On August 26, 1928, Theodore Bernhard Hofmann died. On September 7, 1928, letters of administration were granted. The settlement to revocation was not made until March 4, 1929. The claim of respondent was exhibited and presented to the administratrix on February 21, 1929, and presented to the probate court on March 5th, following.

The evidence discloses that Bertha Hofmann was an unmarried daughter of Theodore Bernhard Hofmann, and appears to have been about fifty years old. She lived with her parents from the time of her birth in the old family homestead in St. Louis. In 1913, her mother died, after which she continued to live in the home with her father and some brothers. Marriages reduced the size of the household until it finally consisted of only claimant, the father, and her brother Jacob. The evidence discloses that she, being the only woman in the household, did all the housework and looked after the welfare of her father after her mother's death. While there is also evidence to show that the father supported, cared for, and maintained respondent, she worked hard, and was very kind to him. During all this period she made no demand for compensation. A number of witnesses testified on behalf of claimant that they had visited this home, and that they had lived neighbors to these people

for many, many years. The evidence discloses that in 1919, also in 1925 and 1927, Theodore Bernhard Hofmann had stated to them on different occasions that claimant had worked hard and would be paid well for her work. Many of these statements were made in the presence of the claimant.

Emma Torey, who was sixty-three years old, testified that she had known the claimant all her life; that she knew that Bertha washed, ironed, cleaned, cooked, and did the housework during all the time in question; that in 1919, when she went to see the claimant at her father's with respect to taking care of a friend, the father stated that Bertha had to do the work there, and that he was going to see that she was well paid for it.

Mary Wollmann stated that she lived next door to claimant, and had lived there for twenty-one years, and had known claimant and her father all that time. She stated that on one occasion in 1925 the elder Hofmann stated to her that he was going to pay Bertha for all the work she had done. The evidence discloses that she did the work as set out in the claim.

Mary Kiser testified that she visited this household quite often; that in 1927, she had a conversation with Theodore Bernhard Hofmann, in which he stated that Bertha had worked awfully hard for him, but that some day he would pay her for what she did. This statement was made in the presence of the claimant.

The evidence discloses that the charges made were reasonable for the services rendered.

It will be noted that the claims were for services rendered prior to the appointment of a guardian.

The first insistence of appellant here that this case should be reversed is that the demand was barred by the Statute of Limitations, for the reason that claimant's demand was for services rendered prior to the appointment of a guardian, and that the demand should have been presented for allowance in the probate court to the guardian, and that as it was not presented to the guardian, it could not be presented to the administratrix, and that even if it could be presented to the administratrix, it must have been presented within one year from the time of the appointment of the guardian. In support of this proposition, such cases are cited as St. Louis v. Hollrah, 175 Mo. 79, 74 S. W. 996; Johnson v. Kaster, 199 Mo. App. 501, 204 S. W. 196, and Greever v. Barker, 204 Mo. App. 190, 223 S. W. 1087. There can be nothing to the first contention of appellant, even though it be conceded that claimant should have presented her claim to the probate court during the pendency of the guardianship. It must be remembered that the guardianship ceased even before six months time had elapsed. Claimant had a certain period—or to be

more specific, one year—to present this claim, but the guardianship did not continue that long. Supposing the ward had died within one month after the appointment of the guardian, could it be said that the mere fact that the account accrued for services rendered prior to the appointment of a guardian, claimant would be barred, because the claim was not presented during the pendency of the guardianship? The cases which appellant relies upon, and which would give any color to her contention, are cases where the claim accrued prior to the appointment of a guardian and the guardianship continued for more than a year, and then later an administrator was appointed and the claim presented there, or was presented in the circuit court. These cases have no application to a situation such as we have here.

It is further contended that even if respondent or claimant could have ignored the guardianship proceedings, she was bound to file her claim during the period of one year prescribed by the special Statute of Limitations, and that the death of the ward and the administration of his estate did not extend the operation of the special Statute of Limitations so as to give respondent more than one year after the appointment of the guardian in which to file her demand. In support of this contention we are cited to Hinshaw v. Warren's Est., 167 Mo. App. 365, 151 S. W. 497; McKinzie v. Hill, 51 Mo. 303, and Knisely v. Leathe, 256 Mo. 341, 166 S. W. 257. Even if we conceded that appellant was right on this proposition, which we do not, the evidence definitely discloses that the claim was filed within one year from the date of the appointment of the guardian. Appellant argues that inasmuch as the ward, or the deceased, was declared insane and a guardian appointed on February 28, 1928, and the first notice published on the next day, the claim was not presented to the probate court until March 5, 1929, or five days more than a year. However, the evidence in the record here does disclose that the ward died on the 26th of August, 1928, and an administrator was not appointed until the 7th day of September following. Therefore, there was an interval of twelve days in which there was neither guardian nor administrator to whom the claim would be presented, and during that twelve days the Statute of Limitations did not operate. [Hinshaw v. Warren's Est., 167 Mo. App. 365, 1. c. 368, 151 S. W. 497.] Therefore, upon appellant's own theory of the case the claim was presented seven days before one year had expired from the time of the appointment of the guardian.

We do not wish to be understood as holding or deciding here at all that this claim would have to be presented within one year of the time of the appointment of the guardian, but if it did as appellant contends then it was presented within one year. Claimant could not

present her claim to the guardian after the death of the ward, for upon the death of the ward the guardianship *ipso facto* terminated, and the only thing the guardian could do was to settle his accounts and deliver the estate and effects of the ward to his personal representatives. [Greever v. Barker, 316 Mo. 308, 289 S. W. 586.]

It is also insisted that the court erred in holding that the Statute of Limitations could not be interposed, because it was not pleaded. This ruling of the court occurred at the beginning of the trial. However, the court, in rendering its opinion, held that it was in error in that respect, and therefore this point goes out of the case, and is of no value to appellant now.

It is further insisted that the Statute of Limitations should have been successfully invoked in this case, because in order that the Statute of Limitations may begin to run with the last item of an account, it must be a mutual, open, and current account, and that with all the charges on one side there is no mutual account. Now, upon this proposition, it will be observed that the account filed is a continuous running account for the services rendered by plaintiff during the entire period in question. There was no cessation. Plaintiff did not leave her father for any period and then come back and start to work again. There was no cessation or break in the continuity thereof, and, under these circumstances, it has been uniformly held in this State that the account is to be regarded as one open running account. If claimant had any valid claim at all, it is fairly inferable that the whole account was to be regarded as one. Therefore, this question is ruled adversely to appellant. [Hyde v. Honiter, 175 Mo. App. 583, 158 S. W. 83; Chadwick v. Chadwick, 115 Mo. 581, 22 S. W. 479; Smith v. Collins (Mo. App.), 243 S. W. 219, l. c. 222.]

Now, the next and last question raised on this appeal is that claimant was not entitled to recover, because she was a member of the household, and rendered services to a member of her own family, and that under these circumstances the presumption obtains that the services are rendered gratuitously, and that to overcome this presumption the claimant must establish an agreement to pay for such services. This, as an abstract proposition of law, is correct, but we are inclined to the view that there is sufficient evidence to support the finding of the court sitting as a jury that plaintiff rendered these services and that the deceased father agreed to pay for them. There is no question but what the rule is that services rendered by one member of a family to another are presumed to have been rendered gratuitously, yet a promise to pay may be inferred from facts and circumstances reasonably justifying the inference of an actual agreement or understanding to pay for the services. In the instant case

we have the testimony of a number of witnesses that the father stated he expected to pay his daughter for these services. These statements were made on a number of occasions in the presence of the daughter. There are circumstances from which it may be inferred that the daughter expected pay for these services, in view of the statements made to her, and in her presence, by her father. She, of course, could not testify to any contract of this kind. She was incompetent as a witness for this purpose. But a number of people who lived in the community for many years heard these statements made. She was the only female member of the household left so far as this record discloses, although other brothers were in the household. She assumed the duties and burdens which would naturally be imposed upon her. She was faithful and loyal in every particular, in looking after the welfare, comforts and business affairs of her father. He stated on many occasions he was going to pay her. She had a right to rely upon these statements. Therefore, we would not be authorized or justified in disturbing this judgment simply because and upon the presumption that services rendered by one member of a family to another are presumed to be gratuitously rendered. [See Hyde v. Honiter, supra; Smith v. Collins, supra; Weir v. Carter's Est. (Mo. App.), 224 S. W. 147; Craighead et al. v. Roberts (Mo. App.), 263 S. W. 536; Broyles v. Byrne (Mo. App.), 13 S. W. (2d) 560.]

The judgment of the circuit court is accordingly affirmed. *Haid, P. J.*, and *Becker, J.*, concur.