**STATE of Missouri ex rel. Rollo EMMONS,
Relator-Appellant,**

v.

**Paul S. HOLLENBECK, Judge of the Probate
Court of Maries County, Missouri,
Defendant-Respondent.**

No. 8381.

Springfield Court of Appeals.

Missouri.

July 2, 1965.

Rehearing Denied July 27, 1965.

Application to Transfer Denied
Sept. 13, 1965.

County who had died intestate on July 10, 1962, and (b) to appoint a suitable person as administrator of the estate of said decedent, against whom relator might institute a civil suit to recover damages for personal injuries alleged to have been sustained by him as a result of the negligent operation of a motor vehicle by Duncan in Phelps County on May 6, 1962. Section 537.020.[1] (Except as otherwise specifically stated, all statutory references are to RSMo 1959, V.A.M.S.) Upon hearing, the circuit court denied the requested writ of mandamus and dismissed relator's petition. The case comes to us upon relator's appeal.

By petition originally filed on May 9, 1962, three days after the aforesaid accident, and thereafter "refiled" on May 28, 1962, Ermil Duncan, a son, sought appointment of a guardian for his father, Charles G. Duncan. Section 475.060. In that petition, it was stated, inter alia, that Charles G. Duncan was a widower 75 years of age then living with his son Ermil in Maries County, that he was "incapable by reason of senility or other incapacity of managing his property and caring for himself," that he was "at present ill and confined to a hospital," and that he owned realty valued at $9,000 and personalty valued at $7,000. After a hearing on June 4, 1962, at which Charles G. Duncan was present in person and represented by counsel [Section 475.-075], the probate court found that he was an incompetent, appointed his son Ermil as guardian [Section 475.090], and upon the filing and approval of a bond [Section 475.100] issued letters of guardianship to Ermil on the same date. Thereafter, notice of Ermil's appointment as guardian was duly published once a week for four consec-

Northern & Crow, Rolla, for relator-appellant.

Harold S. Hutchison, Vienna, Claude T. Wood, Richland, for defendant-respondent.

STONE, Judge.

In this proceeding instituted in the Circuit Court of Maries County on January 27, 1964, Rollo Emmons, the relator, sought a writ of mandamus commanding the Honorable Paul S. Hollenbeck, Probate Judge of Maries County, the respondent, (a) to vacate the order theretofore entered by respondent on January 20, 1964, which had denied relator's application for appointment of an administrator of the estate of Charles G. Duncan, deceased, a resident of Maries

---

1. By reason of subsec. 1, "[c]auses of action for personal injuries . . . shall not abate . . . by reason of the death of the person against whom such cause of action shall have accrued; but . . . such cause of action shall survive . . . against the person . . . liable for such injuries and his *legal representatives* . . ."; and, by reason of subsec. 2, " . . . [t]he existence of the right of action for

. . . personal injury that does not result in death shall be sufficient to authorize and to require the appointment of a *personal representative* for the person liable for such . . . injury by the probate court upon his death upon the written application of any person interested in such right of action for . . . injury." (All emphasis herein is ours.)

utive weeks [Section 475.140], the first publication of such notice having been on June 7, 1962.

While under guardianship, Charles G. Duncan died intestate on July 10, 1962. No letters of administration were issued [Section 473.110], and there was no application for letters prior to the filing of instant relator's application in the probate court on January 20, 1964. However, the guardianship estate was held open after the ward's death; and on March 18, 1963, nine months and eleven days after the first publication of notice of the appointment of Ermil as guardian, he filed a "petition" in the probate court in which he averred, inter alia, that "to the best of his knowledge and belief the incompetent died leaving no debts other than those payable under sub-section 1 of Section 475.320" and that he (Ermil) believed that "it would be to the best interest to (sic) the estate and to the heirs-at-law of Charles G. Duncan, deceased, that no letters of administration be granted upon his estate, and that the guardian, Ermil Duncan, be authorized, directed and empowered in accordance with Section 475.320 . . . to administer as herein provided, and after final settlement of the guardian is approved and all obligations of the estate paid, distribution be made to the heirs in the same manner with the same effect as in the case of an administrator." On the date of the filing of said petition, i. e., on March 18, 1963, the probate court entered an order which included findings to the same effect as the above-quoted averments in the guardian's petition and then "adjudged and decreed that no letters of administration be granted under (sic) the estate of Charles G. Duncan, incompetent, now deceased, and that the guardian of the estate of Charles G. Duncan, incompetent, is hereby authorized and directed to administer on said estate and to make distribution to the heirs at law of Charles G. Duncan, deceased, in accordance with Section 475.320."

On November 12, 1963, the probate court entered an order captioned "Final Settle-ment Approved, Finding and Order of Distribution (Intestate Estate)," undertaking to adapt for use in the guardianship estate under discussion a printed form so captioned for use in decedents' estates, which appears at 26 V.A.M.S. pp. 283–284 following Section 473.583. References to the "administrator" in the printed form were changed to "gdn.-adm." or to "gdn.-administrator," and the reference to "the letters of administration" in the second printed line of the fifth paragraph of the form [26 V.A.M.S. p. 284] was changed to "the letters of guardianship." In the language of the printed form, this order recited that the court "takes up for consideration the final settlement and the verified petition for order of distribution, filed hereon (sic) on the 31 day of October, 1963, by Ermil Duncan, gdn.-administrat___ of the estate of Charles G. Duncan, deceased"; stated that the final settlement, showing that "the gdn.-adm. has on hand $4342.14 in cash" and no other personal property, had been audited and approved; contained findings in the language of the printed form, including the adapted finding in the fifth paragraph "that there was due publication according to law, of notice of the letters of guardianship granted herein to the aforesaid gdn.-adm. and that the first publication of such notice was on June 7, 1962"; and ordered that the personal property, to wit, the aforesaid sum of $4,342.14, be distributed to the six children, share and share alike, and that title to certain described real estate be vested in them. "Notice of Filing of Final Settlement and Petition for Distribution," in the form used in decedents' estates, which appears at page 31 of the 1964 cumulative pocket part to 26 V.A.M.S., had been published once a week for four consecutive weeks prior to the filing of the final settlement. Section 473.-587. This notice was captioned "In the estate of Chas. G. Duncan, deceased," was addressed "To all persons interested in the estate of Chas. G. Duncan, deceased," and bore the printed signatures of "Ermil Duncan Administrator" and his attorney. The transcript does not include the final settle-

ment and the petition for order of distribution, and the record reflects no activity in the guardianship estate either (a) during the interval between the ward's death on July 10, 1962, and the filing of the guardian's "petition" on March 18, 1963, seeking authorization "to administer on said estate" under Section 475.320, or (b) during the interval between March 18, 1963, and the filing of the final settlement on October 31, 1963.

On January 20, 1964, instant relator filed in the Probate Court of Maries County "Application of Interested Person for Appointment of Administrator" in which he averred, inter alia, that he had a claim for personal injuries "arising out of an act of negligence of the said Charles G. Duncan in the operation of his motor vehicle on the 6th day of May, 1962," near Rolla in Phelps County, and prayed that the application "be set for hearing within fifteen days and notice of hearing served upon all persons entitled to administer the estate of the said Charles G. Duncan" [see Section 473.020] and that, after hearing, a "legal representative of the deceased" be appointed. See Section 537.020. Pursuant to notice, relator's said application was heard in the probate court on January 20, 1964, and on the same date was denied. Institution of this mandamus proceeding in the circuit court followed shortly on January 27, 1964.

*Relator's position is* that his cause of action for personal injuries alleged to have resulted from the negligence of Charles G. Duncan on May 6, 1962, could not have been prosecuted against the guardian, Ermil Duncan, after the ward's death on July 10, 1962; that the nine-month nonclaim statute applicable to "claims against the estate of an incompetent based on liabilities arising prior to the guardianship" [Section 475.210] did not run against relator's cause of action either (a) by reason of the guardianship estate being held open for more than nine months after the first publication on June 7, 1962, of notice of the guardian's appointment or (b)

by reason of the guardian's "petition" of March 18, 1963, and subsequent proceedings under Section 475.320; and that relator is entitled, as a matter of right, to the appointment of an administrator of the estate of Charles G. Duncan, deceased, against whom relator may prosecute his cause of action for personal injuries. Section 537.-020.

On the other hand, *respondent asserts*, in his first point, that relator's cause of action is barred by the nine-month nonclaim statute [Section 475.210] for relator's "failure to exhibit his claim to the guardian within nine months after the date of the first publication of notice of appointment of guardian" (i. e., within nine months after June 7, 1962), and then adds, in his second point, that relator "was not entitled to the appointment of an administrator under Section 537.020 because his exclusive remedy was against the guardianship estate." Although not within the apparent scope of either of the two stated points in his brief, respondent also argues, under the second point, that from and after March 18, 1963, when the probate court entered an order directing that no letters of administration be granted upon the estate of Charles G. Duncan and authorizing the guardian to "administer" under Section 475.320, the guardian became and was a "guardian-administrator" who was an "administrator" and thus a "personal representative" within the contemplation and meaning of Section 537.020, against whom relator properly might have asserted his cause of action at any time during the period "from March 18, 1963, until November 12, 1963," when the final settlement of the "guardian-administrator" was approved.

However, in the final analysis the legal validity of respondent's contention that relator's cause of action is barred by Section 475.210 (the nine-month nonclaim statute) depends upon whether or not that nonclaim statute continued to run during the period from July 10, 1962, the date of the ward's death, to March 18, 1963, the date of the order authorizing the guardian to proceed

under Section 475.320. For, if the non-claim statute did not continue to run during that *intermediate* period from July 10, 1962, to March 18, 1963, the statutory period of nine months still would not have expired by November 12, 1963, the end date for which respondent here contends, since the *initial* period from June 7, 1962 (the date of the first publication of notice of the guardian's appointment) to July 10, 1962, was one month and three days, the *final* period from March 18, 1963, to November 12, 1963, was seven months and twenty-five days, and (*even if, contrary to our view,* the nonclaim statute had run during that *final* period) the statute would have run only eight months and twenty-eight days to November 12, 1963.

■ In turn, whether the nonclaim statute continued to run during that *intermediate* period (and also during the *final* period) depends, as we shall see, upon whether or not Ermil Duncan, the guardian of Charles G. Duncan, became, after the latter's death on July 10, 1962, the "legal representative" or "personal representative" of his deceased ward, against whom instant relator properly could have asserted his cause of action for personal injuries sustained in the accident of May 6, 1962. See Section 537.020. A plain, direct and complete answer to this question is found in the opinion of our Supreme Court, en banc, in Clarke v. Organ, Mo., 329 S.W.2d 670, 674(4), where it was said that "[s]ince the enactment of these statutes [Section 537.-020 and its predecessor statutes], the executor or administrator of a deceased tort-feasor is the one and only defendant in an action such as this." Instant respondent characterizes the quoted statement as "mere obiter dictum." We do not so regard it; but, wholly aside from the quoted statement, we think the conclusion inescapable that a guardian does not become the "legal representative" or "person-

al representative" of his deceased ward within the contemplation and meaning of Section 537.020.

■ ■ "'[P]ersonal representative' [as used in Section 537.020] is synonymous with legal representative which is a generic term denoting an administrator or executor of a deceased person,"[2] and certainly a guardian is not an administrator or executor. We have not overlooked Section 475.320, upon which instant respondent leans heavily, which provides that, *in certain cases* (of which more anon), "the [probate] court, upon the death of any ward, may order that no letters of administration shall be granted upon his estate" and may order payment of specified expenses, taxes and obligations *out of the* [guardianship] *estate by the guardian"*; that, "after the *final settlement of the guardian* is approved, and upon a showing that all obligations of the estate which have been authorized by the court have been paid, the court shall order the *guardian to make distribution to the heirs in the same manner and with the same effect as in the case of an administrator"*; and that "[i]n such case the *guardian* is subject in all respects and to the same extent to the liabilities of an administrator and liability on the *guardian's bond* continues and applies to the complete administration of the estate of the deceased ward." And we recollect that Ermil Duncan boldly appropriated the title of "Administrator" in publishing "Notice of Filing of Final Settlement and Petition for Distribution" addressed "To all persons interested in the estate of Chas. G. Duncan, deceased," and that, in the order approving that final settlement, instant respondent blandly referred to Ermil as a "guardian-administrator." But Section 475.320 simply grants to the probate court the discretionary right, *in certain cases,* to "order that no letters of administration shall be granted," and we perceive in the lan-

2. State ex rel. McCubbin v. Ginn, Mo. (banc), 347 S.W.2d 119, 125(7). See Casey v. Hoover, 197 Mo. 62, 94 S.W. 982, 983; Harris v. Bates, 364 Mo. 1023, 1027, 270 S.W.2d 763, 766(5); Oates v. Union Pac. Ry. Co., 104 Mo. 514, 516, 16 S.W. 487, 488; Trask v. Davis, Mo.App., 297 S.W.2d 792, 797(3).

guage of that statute no legislative purpose or intent to transmute the legal status of a guardian to that of an administrator. Nor can a guardian work such transmutation simply by arrogating to himself, or by inducing another to bestow upon him, the title of "administrator," for even as "[t]hat which we call a rose by any other name would smell as sweet" [Romeo and Juliet, Act II, Sc. 2], a guardian under any other name remains the same.

Furthermore, it appears that Section 475.-320 itself contemplates the appointment of an administrator in a situation such as that here presented. *Subsection 1* of the cited statute empowers the probate court, "[e]xcept in cases mentioned in subsection 2," (a) to "order that no letters of administration shall be granted," (b) to authorize the guardian to pay certain specified items, to wit, (1) "the funeral and burial expenses," (2) "inheritance and estate taxes for which the estate of the deceased ward is liable," (3) "obligations of the ward incurred by the guardian," and (4) "expenses of administration," and (c) "upon a showing that all obligations of the estate which have been authorized by the court have been paid ⋄ . . to make distribution to the heirs . . .." *Subsection 2* of the same statute provides that, "[w]henever a minor or incompetent dies leaving *debts, other than those payable by the guardian under subsection 1,* for which his estate would be liable in an action . . . letters . . . of administration shall be granted on the estate of the deceased ward, in the manner provided by law, as in case of other . . . intestates."

The term "debts" is not defined either in Section 472.010, the general definitive statute in the probate code also applicable to guardianships [Section 475.020], or in Section 475.010, the definitive statute in the guardianship chapter. In the absence of a statutory definition, we determine the meaning of that term, as used in subsection 2 of Section 475.320, from the context in which, and the apparent intent with which, that term is used, having appropriate regard for the subject matter and manifest purpose of the legislative enactment.[3] So considered, we believe that "debts" is the substantial equivalent of "claims," which is defined in Section 472.010(4) as including "liabilities of the decedent which survive whether arising in contract or in tort or otherwise, funeral expenses, the expense of a tombstone and costs and expenses of administration."[4]

A perspicacious writer in this field treats "debts" as being synonymous with "claims" in his appropriate and incisive comments concerning Section 475.320: "By its terms the present section is not applicable when the ward dies leaving *debts* for which his estate would be liable in an action at law, other than funeral and burial expenses and inheritance and estate taxes, and obligations of the ward incurred by the guardian and expenses of administration. . . . The practical application of this section meets with many difficulties. . . . The estate of a ward may be liable not only for *claims* arising subsequent to guardianship which were created by the guardian, but also in certain instances for *claims created by the ward, particularly tort claims.* The

3. See particularly Nudelman v. Thimbles, 225 Mo.App. 553, 559–560, 40 S.W.2d 475, 477(3), 477–478(6). Consult also Household Finance Corp. v. Robertson, Mo. (banc), 364 S.W.2d 595, 602; Union Electric Co. v. Morris, 359 Mo. 564, 569, 222 S.W.2d 767, 770; State ex rel. Case v. Seehorn, 283 Mo. 508, 528, 223 S.W. 664, 670(6); Garrard v. State Dept. of Public Health & Welfare, Mo.App., 375 S.W.2d 582, 590; State v. Bern, Mo.App., 322 S.W.2d 175, 177.

4. Although the term "debts" is more frequently employed in referring to liquidated demands, it is sometimes used in a broader sense, embracing unliquidated obligations arising in tort. See Nudelman v. Thimbles, supra, 225 Mo.App. at 559–560, 40 S.W.2d at 477–478(6); Des Arc Oil Mill Co. v. McLeod, 141 Ark. 332, 216 S.W. 1040, 1041(1); American Ice Cream Mfg. Co. v. Economy Laundry Co., 148 Ga. 624, 97 S.E. 678(2).

above section authorizing the probate court to dispense with administration upon a deceased ward's estate is limited to cases where such *claims* do not exist. However, no procedure is prescribed whereby a conclusive determination of the existence of such *claims* may be had. . . . It is extremely doubtful if an order of the probate court in a guardianship proceeding declaring that the deceased ward left no *claims*, left no will and determining who his heirs are and directing distribution to them is a determination conclusive upon interested parties who did not participate in such a determination." 5 Maus, Probate Law and Practice, § 1986, pp. 332–333.

■ Therefore, it would seem that Section 475.320 was not applicable in the situation under discussion and did not authorize an order dispensing with administration upon the estate of the deceased ward. And, with no showing that instant relator had actual notice or knowledge of the proceeding under Section 475.320 or that he in any way participated therein, we are of the opinion that the purported determination in the order of the probate court that the ward "died leaving no debts other than those payable by the guardian under subsection (1) of Section 475.320" was not conclusive upon instant relator and was not made so by the guardian's abortive publication (neither justified in fact nor authorized in law) of "Notice of Filing of Final Settlement and Petition for Distribution," in which he professed to act as the "administrator" of "the estate of Charles G. Duncan, deceased." In any event, the purported proceeding under Section 475.-320 did not work a change in Ermil's status

from that of guardian to that of "administrator."

There are other persuasive reasons for our conclusion that guardian Ermil did not become a "legal representative" or "personal representative" of his deceased ward, against whom instant relator properly could have asserted his cause of action for personal injuries. Section 475.290, subsection 1, imposes the unequivocal requirement that "[g]uardians shall make final settlement of their guardianship* at a time fixed by the court, either by rule or otherwise, *within sixty days after termination of their authority.*"[5] This statutory command obviously contemplates prompt settlement of the guardian's accounts and authorizes no delay in the guardian's final settlement either in order that the nine-month nonclaim statute [Section 475.210] might run against claims or in order that litigation might be instituted against the guardian and pursued to a conclusion prior to his final settlement.

■ Reversing the practice prior to the Probate Code of 1955,[6] subsection 1 of Section 475.260 now directs that ". . . all actions between the ward or the guardian and third persons in which it is sought to charge or benefit the estate of the ward shall be prosecuted by or against the guardian of the estate as such"; but subsection 2 of the same statute significantly provides that ". . . *if the ward dies, his personal representative may be substituted* . . .." It thus is made apparent in the guardianship chapter [Chapter 475] that the general assembly did not regard a "guardian" as the "personal representative" of a deceased ward; and we think

5. With certain limited exceptions hereinafter noted but not here important, the authority of a guardian is terminated by the death of his ward. Section 475.285, subsec. 1, subd. (6).

6. Title to the property of an incompetent ward is in the ward [Williams v. Maxwell, Mo., 82 S.W.2d 270, 274(10); Gibson v. Shull, 251 Mo. 480, 487, 158 S.W. 322, 324 (3); Darr v. Darr, Mo.App., 287 S.W.2d 118, 120(5)]; and, under prior practice,

an action on behalf of the ward was required to be prosecuted in his name by the guardian [Kleber v. Carlos, Mo., 202 S.W. 2d 865, 866(4)] and an action against him was required to be brought against him personally although defended on his behalf by his guardian. Judson v. Walker, 155 Mo. 166, 179, 55 S.W. 1083, 1085 (1); In re Cordes' Estate, Mo.App., 116 S.W.2d 207, 209; 5 Maus, Probate Law and Practice, § 1932, p. 283.

it reasonably inferable that the general assembly did not contemplate or intend that, *after the ward's death,* litigation should be instituted or prosecuted against the guardian on alleged liabilities of the ward.

Instant respondent relies upon In re Alexander's Estate, Mo., 360 S.W.2d 92, and Greever v. Barker, 204 Mo.App. 190, 223 S.W. 1087. In each of those cases, claims against the ward's estate *based on liabilities arising prior to guardianship* were barred by the running of the then applicable nonclaim statute *prior to the ward's death.*[7] Neither case involved a factual situation analogous to that here presented where the ward died before the nonclaim statute had run, and neither opinion reached or discussed the legal questions determinative of the instant case.

In Hofmann v. Sawyer, 227 Mo.App. 149, 50 S.W.2d 674 (not cited by counsel), where the ward died less than six months after the guardian's appointment and before the then applicable one-year nonclaim statute had run, the court held that plaintiff's claim for services rendered prior to guardianship was not barred by failure to present it to the guardian prior to the ward's death [227 Mo.App. at 154–155, 50 S.W.2d at 675(1)]; that plaintiff could not have presented her claim to the guardian after the ward's death [227 Mo.App. at 155–156, 50 S.W.2d at 676(3)]; and that, even if the court agreed (which it did not) with counsel for defendant administratrix that plaintiff was required to present her claim within the one-year period prescribed in the nonclaim statute, the running of the statute was interrupted or tolled during the period from the date of death of the ward to the date of appointment of the adminis-

tratrix [227 Mo.App. at 155, 50 S.W.2d at 675(2)].

In Williams v. Vaughan, 363 Mo. 639, 651, 253 S.W.2d 111, 116 (likewise not cited by counsel), our Supreme Court, en banc, said that, upon the ward's death, the "guardian was without further power except to settle his account and deliver the estate and effects of his ward to the ward's personal representative," the administrator of his estate; that "[o]f course, it would have *been improper for these respondents* [claimants who had loaned monies to the guardian for the ward's care] *to have made a demand against the guardian after the death of his ward";* and that the administrator, who had "sole authority to represent the estate," was a necessary and proper party to the action.

And in Trask v. Davis, Mo.App., 297 S.W.2d 792, 797(3), we said that, after the ward's death, "the administrator or executor became the personal representative against whom the claim must be made."

■ True, the Hofmann, Williams and Trask cases, supra (as well as the Alexander's Estate and Greever cases, supra, cited by instant respondent), involved claims filed prior to the Probate Code of 1955 when, as the cases[8] pointed out, the sole function of the guardian after the ward's death was to settle his accounts and to deliver the estate and effects of the ward to his personal representative. But, under the Probate Code of 1955, the authority of a guardian still terminates upon the ward's death subject only to the specific statutory exception "that if there is no person other than the estate of the ward liable for the funeral and burial expenses of the ward, the guardian may, with the approval of the

---

7. Insofar as Greever v. Barker, 204 Mo. App. 190, 223 S.W. 1087, reached the same result with respect to claims *based on liabilities arising during guardianship,* it has been overruled. In re Alexander's Estate, Mo., 360 S.W.2d 92, 100. See Trask v. Davis, supra, 297 S.W.2d at 797, and Tock v. Tock, Mo.App., 120 S.W.2d 169, 172.

8. Williams v. Vaughan, 363 Mo. 639, 651, 253 S.W.2d 111, 116; Greever v. Barker, 316 Mo. 308, 289 S.W. 586, 588–589; Evans v. York, Mo.App., 216 S.W.2d 124, 128(7); Trask v. Davis, supra, 297 S.W. 2d at 797(3); State ex rel. Pryor v. Anderson, Mo.App., 112 S.W.2d 857, 862, affirmed 343 Mo. 895, 123 S.W.2d 181; Section 458.550, RSMo 1949.

**90**

court, contract for the funeral and burial of the ward after such death" [Section 475.285, subsec. 1, subd. (6)] and to the general statutory provision that "he shall continue to have such authority with respect to the [guardianship] estate *as may be necessary to wind up his administration as such guardian,* subject to the control of the court and to such limitations on such authority as the court may impose." Section 475.285, subsec. 3. And, as has always been true, "[g]uardians and curators [still] are creatures of the law and are statutory officers of the probate court. Consequently, in the very nature of things, they [still] have no inherent powers, as such, but only such powers as are prescribed by statute . . .." [9] The relationship of guardian and ward still is necessarily terminated by the death of the ward [10] and the guardian thereby is shorn of all powers excepting those specifically conferred by statute.

◼ All of the foregoing leaves us in no doubt but that, after the death of his ward on July 10, 1962, guardian Ermil was not the "legal representative" or "personal representative" of such deceased ward, against whom instant relator properly could have asserted his cause of action for personal injuries sustained in the accident of May 6, 1962. That being true, unless and until an administrator of the estate of the deceased ward is appointed, there will be no one against whom relator properly could prosecute his said cause of action. And, so long as that situation exists, the nine-month nonclaim statute [Section 475.-210] will not run against relator.[11] Whether or not, *after* appointment of an adminis-

trator of the decedent's estate, relator's cause of action might be barred by the running of the nonclaim statute applicable to claims against the *guardianship* estate [Section 475.210], is a question which we need not and do not probe or rule. However, Section 473.360(3) undoubtedly would bar relator's cause of action "if administration of the [decedent's] estate is not commenced within five years after the death of the decedent."

◼ Section 537.020, which provides for the survival of causes of action such as that which relator seeks to prosecute, created a substantive right [Mennemeyer v. Hart, 359 Mo. 423, 430, 221 S.W.2d 960, 963; Siberell v. St. Louis-San Francisco Ry. Co., 320 Mo. 916, 930, 9 S.W.2d 912, 917(16)]; and, upon proper application by relator, "the issuance of letters of administration is mandatory." State ex rel. McCubbin v. Ginn, Mo. (banc), 347 S.W.2d 119, 125. No question having been raised as to the form or sufficiency of relator's application filed in the probate court on January 20, 1964, and it appearing to be proper in form and substance [Section 473.020], the granting of said application and the appointment of a suitable person as administrator of the estate of Charles G. Duncan, deceased, became mandatory.

Accordingly, it is the judgment of this court that the judgment of the Circuit Court of Maries County be set aside and for naught held, and that said circuit court be directed to issue forthwith its peremptory writ of mandamus commanding respondent, as Probate Judge of Maries County, forthwith (a) to vacate the order

---

9. Scott v. Royston, 223 Mo. 568, 609, 123 S.W. 454, 466(10); In re Cordes' Estate, Mo.App., 116 S.W.2d 207, 209(1). See 39 C.J.S. Guardian and Ward, § 1, l.c. 9; 25 Am.Jur., Guardian and Ward, § 60, p. 40; annotation 60 A.L.R.2d 963.

10. In re Thomasson, Mo., 159 S.W.2d 626, 629(7); State ex rel. Pryor v. Anderson, supra, 112 S.W.2d at 862(5); 39 C.J.S., Guardian and Ward, § 41, p. 61; 25 Am. Jur., Guardian and Ward, § 53, p. 37; annotation 60 A.L.R.2d 963.

11. Hofmann v. Sawyer, 227 Mo.App. 149, 155, 50 S.W.2d 674, 675(2); Hinshaw v. Warren's Estate, 167 Mo.App. 365, 368, 151 S.W. 497, 498. See Thompson v. Lyons, 281 Mo. 430, 452–453, 220 S.W. 942, 948(9); McKinzie, Admx. v. Hill, Admr., 51 Mo. 303, 305; Austin v. Shipman, 160 Mo.App. 206, 216–217, 141 S.W. 425, 428(4); Little v. Reid, 75 Mo.App. 266, 269–270.

entered by respondent on January 20, 1964, which denied relator's application for appointment of an administrator of the estate of Charles G. Duncan, deceased, and (b) after notice and hearing pursuant to Section 473.020, to appoint some suitable person as administrator of said estate.

RUARK, P. J., and HOGAN, J., concur.